<hr />

## No. 125.

### ISAAC HAYS v. SMITH BROS. & CO.

1. Where defendants purchased two hundred casks of Seltzer waters, packed in Prussia, in casks of one hundred stone jugs each, and it is shown that such casks cannot be transported without some breakage of the jugs; held, that these circumstances have entered into the contract, and where the actual breakage is not beyond what is usual, the vendee cannot refuse to receive the property and rescind the contract.

2. Where, in such a case, before attempting to avoid the contract, defendants had received ninety casks, and subsequently tendered to plaintiff the price thereof, which he received, such plaintiff does not thereby necessarily waive his right to recover for the price of the remainder.

3. Where defendants were in default by refusing to accept the property, plaintiffs were not compelled to sell at defendants' risk immediately. Mere delay and indulgence in such a case, incurred in attempts by plaintiff to secure a settlement, cannot avail defendants as a means to avoid liability.

4. Defendants having positively refused to accept the remainder of the consignment, no putting at default was necessary.

5. The sale at a purchaser's risk in cases such as this, is not a sale a la folle enchere, as provided in the Civil Code.

6. Where evidence showed a setting apart and sale of the 110 casks, at the

13

risk of defendants, the mere fact that the auctioneer's statement or bill showed a purchase by the adjudicatee of 113 casks, will not warrant the court in ignoring the other evidence upon this question.

7. Where a purchaser refuses to comply with his contract, the vendee may store the property at his risk in a public warehouse, retaining, however, the possession and control of the property to enforce and secure payment of the price.

8. Unless the storing be made *in the name of the purchaser,* it is not a consignment, divesting the seller of his right of detention until payment of the price.

*Appeal from Civil District Court, Division A. Tissot, Judge.*

*Breaux & Hall* for plaintiff and appellant.
*Gilmore & Sons* for defendants.

ROGERS, J.—The defendants contracted with one B. E. Castendyk, who was the duly accredited agent of plaintiff, for two hundred whole casks of Seltzer water of one hundred jugs each, to be shipped direct from Rotterdam to New Orleans.

The water was shipped on the vessel "Jos. Slater," and reached this port early in May—about one month after the contract. The defendants received and hauled to their store ninety casks of the consignment, and refused to receive any more. After considerable correspondence between the parties, and some delay, the balance of the order, say 110 casks, on December 17th, were sold, and this suit is to recover from defendants the difference between the contract price and the sum realized by the sale, with certain expenses, such as storage and the like.

Defendants answer that the two hundred casks were in unmerchantable condition; that inasmuch as plaintiff accepted payment for the ninety casks taken, he cannot claim more, and virtually discharged defendants from the contract; that plaintiff took charge of the remaining 110 casks, and held them until the season for the sale and use of the article had passed.

Our learned brother, who seems to have given the case great consideration, did not think there was much merit in the

Hays vs. Smith Bros. & Co.

defense, in so far as the facts disclosed the unmerchantable character of the goods, or that because plaintiff accepted the payment for ninety casks actually delivered, declaring, when he so accepted, that he would hold defendants for the balance, he thereby discharged them from the contract. In these conclusions we agree with the District Judge. The Seltzer water is a staple article, shipped in a certain manner, viz: in jugs packed in casks. Nothing unusual or extraordinary is shown in the condition of this shipment, which should take it out of the general rule, that must inevitably apply to such cargoes. When defendants ordered them, they must be presumed to have known the manner of packing such articles.

Plaintiff was justified in receiving payment for his property which defendants had received. It was due to him, and he did not necessarily abandon his right to recover the whole contract. We cannot presume a man intends to give away a right. In this case, however, on the acceptance of the money, plaintiff notified defendants he accepted the payment as made, on account of the whole order. But the judge a quo considered that the sale at public auction in December, and the failure to make a tender, and set apart the 110 casks after the refusal of defendants, should avail the defense. In this we do not agree. If defendants had so desired, they could · at any time have taken possession of the 110 casks before the sale, and the mere indulgence granted them, in attempts to obtain a settlement, cannot, and should not, be permitted to them as a means of avoiding liability. 10 Bos. (N. Y.) 130. There was no necessity for a formal tender; the defendants had absolutely refused to receive the shipment; the law does not compel a person to do a vain thing. 3 La. 385; 14 La. An. 401. 1 McGloin, 151.

When defendants refused to accept the goods, plaintiff had the right to sell the rejected goods to the best advantage. He was not bound to sell at auction. Defendants were notified that the 110 casks were stored at their risk, and when the sale was announced they were fully notified.

The proceeding had in this case has evidently been confused

with the technical proceedings of a sale à la folle enchère. There can be no such sale, unless preceded by a sale at auction. Under the provisions of our Code, the remedy must be strictly construed, the original vendee is absolutely bound by the price of the sale à la folle enchère, and cannot dispute it. 14 La. 585. In the sale resulting as in the present, from a breach of contract, the difference of the price is a prima facie estimate of damage—it is not absolute. 3 La. 384; 4 La. An. 641.

At the sale in December Schmidt & Zeigler purchased. It is contended they were plaintiff's agents, and, purchasing as they did, forfeits plaintiff's right to recover. The testimony does not show that Schmidt & Zeigler were the agents of plaintiff. They were the consignees of the ship "Jos. Slater," and beyond this, as to this cargo, bore no other relation.

We think plaintiff should recover. The judgment is reversed, and it is now ordered, adjudged and decreed that plaintiff recover from the defendants, Charles Smith, Thomas Smith and J. B. Sinnott, and the firm whereof they are members, Smith Bros. & Co., in solido, the sum of $694 30, with legal interest from July 12, 1879, with costs of both courts.

## ON APPLICATION FOR REHEARING.

McGLOIN, J.—An earnest application has been made in this case for a rehearing. It is complained, that inasmuch as defendants bought two hundred casks of one hundred jugs each, they were entitled to a delivery of twenty thousand jugs, and could not be compelled to receive less. The principle contended for is correct, that a purchaser cannot be compelled to accept less than that for which he has contracted; but we do not consider it applicable to a case like this. Defendants did not purchase twenty thousand jugs of Seltzer water in so many separate packages, but they bought two hundred casks, each to contain one hundred jugs. The law, in cases such as this, is not intended to govern arbitrarily, but simply to regulate such transactions in default of contracts express or implied. It is

shown that Seltzer water is universally packed in the manner in which the water in this case was put up; that it is so packed in Prussia, and has to bear transportation from thence. The commodity is a cheap one, and cannot bear an expensive method of preparation for shipment. The style of packing is universally known. It is shown that it is an impossibility to transport these casks of stone jugs without some breakage. All of these facts must have been known to defendants, and they must be held to have contracted with reference thereto. If their position be well taken, it would be a matter of impossibility to make binding contracts of sale, so far as goods of this character are concerned, inasmuch as, if any of the jugs were broken during transportation, as must be in every instance, the vendee would be at liberty to repudiate the contract if he chose so to do.

Had the purchase in this case been of two hundred blocks of ice, of a ton each, the purchasers could hardly maintain that they were not aware of the fact that ice melts, and demand a rescission of the contract under the authorities they have cited, because, in transit, the ice had lost some of its original weight. Defendants have not asked a diminution of price, and so we were not called upon to determine who should bear the loss from breakage in such cases, but we do declare it to be our opinion that the circumstances disclosed do not warrant the demand for rescission.

It is complained that this Court did not notice the defense that the 110 casks in question were not set apart, but were sold confusedly with two other casks, making 113 in all. The notices to defendants, the advertisements and other evidence, shows that 110 casks were tendered and stored, and subsequently sold at defendant's risk. To destroy this defendant relies upon the bill or statement of the auctioneer, showing sale of 113 casks at a certain price *per cask* to Schmidt & Ziegler. It is not shown that there were not two offerings, one of 110 casks, and the other of two casks, which being to same purchaser, at same price, were put in one bill. A simple *statement* or docu-

ment like this, which seems to have escaped special notice below, and which does not purport to furnish a detailed history of the transaction, with reference to which transaction the defendant has not chosen to give us the particulars, will not warrant us in disregarding the other evidence.

It is also urged that after plaintiff had stored the Seltzer water at the risk of defendants, the goods were, in fact, their property, and plaintiff had no right to sell, as he has done. It does not follow, upon every such storing, that there is a divestiture of the seller's right of possession until payment. After default the goods were at the risk of Smith, Brothers & Co., La. Civil Code, Arts. 2467, 2468, 2469, but plaintiff was under no necessity of allowing them to remain upon the public landing, or even to encumber his store, if he had had one. La. C. C., Art. 2469. He was at liberty to place them on storage in a safe and proper place, as for instance in a public warehouse, notifying the vendee of the fact, and that the goods are still at his risk. This was all that plaintiff did in this case. His agents still retained control of the property which stood in their name at the warehouse. Had the property been there stored, *in the name of Smith, Bros. & Co.*, and they notified accordingly, then there might have been, by plaintiff, a surrender of the right of possession, until payment, granted by La. Civil Code, Art. 2487. In such a case, perhaps the sale at auction might have been a re-taking by plaintiff of the goods; but in this case, there was nothing of the kind.

Rehearing refused.