## No. 8768.

## Orleans Appeal.

## SCHWARTZ & FERRY v. L. L. LAMULLE.

(March 30, 1925, Opinion and Decree.)

(April 27, 1925, Rehearing Refused.)

(June 24, 1925, Writ of Certiorari to Supreme Court Refused.)

*(Syllabus by the Court.)*

1. Louisiana Digest—Sales—Par. 122, 129.

Where defendant is in default by refusing to accept a commodity sold under contracts of sale, plaintiff is not compelled to sell at defendant's risk immediately. Mere delay or indulgence in such a case, incurred in attempts by the plaintiff to secure a settlement, cannot avail the defendant as a means to avoid liability.

2. Louisiana Digest—Sales—Par. 121, 122.

The fact that a seller who is entitled to have the buyer accept the delivery of a commodity under a contract of sale, makes various concessions in order to facilitate the buyer, affords no reason for releasing the buyer from his obligation to receive the goods, where nothing has been done to prejudice his rights.

3. Louisiana Digest—Damages—Par. 71.

Where defendant has been placed in default and has failed to plead or prove that the market price ultimately received was to his prejudice or that a better price could have been obtained at the time of breach or later, the damages claimed as a difference between the contract price and the market price of re-sale will be allowed.

Appeal from Civil District Court for the Parish of Orleans, Div. "B", Hon. Fred D. King, Judge.

This is a suit to recover damages for a breach of contracts.

There was judgment for defendant and plaintiff appealed.

. Judgment reversed.

Wm. Ellis, Eugene Thorpe, Thorpe & Thorpe, attorneys for plaintiff and appellant.·

Loys Charbonnet, attorney for defendant and appellee.

BELL, J. Plaintiff, a commercial partnership, prosecutes this appeal from a judgment rejecting its demand for $1,173.60, claimed as damages alleged to have been sustained by reason of defendant's failure to send for or to receive from the plaintiff firm various lots or shipments of flour, sold by it to defendant under four separate contracts. Judgment was originally taken by default against the defendant for the amount claimed, but after motion for a new trial, duly granted, defendant joined the issue and judgment was finally rendered in favor of defendant dismissing plaintiff's claim.

The four contracts are in writing, signed by the plaintiff's authorized salesman and by the defendant, and these contracts are annexed to and made part of the petition. Considering them in the order of their execution, the issues established by the pleadings and the facts regarding the respective contracts, appear to be as follows:

### CONTRACT NUMBER ONE.

Plaintiff alleged that it sold defendant on July 12, 1920, 100 barrels of flour, known as "Polar Bear" flour, at $13.50 per barrel, to be taken by defendant within forty days; that the said agreement was in writing, and that defendant, at various times during the months of September, October and November, 1920, took and received from plaintiff out of that particular contract, 64 barrels, leaving a balance of 36 barrels not taken by the defendant.

Defendant admitted purchasing the flour at the above price and in the amount stipulated; that he was to take it within forty days from the date of the order, and that he received 64 barrels on account. He denied, however, that he refused to take the balance of 36 barrels, and averred on the contrary that plaintiff failed to deliver the balance of 36 barrels, notwithstanding demand therefor made by defendant within the life of the order. Defendant for that reason denied liability under the Polar Bear order.

The evidence shows conclusively that defendant at no time made demand upon plaintiff for the remaining 36 barrels of Polar Bear flour involved in this contract. Defendant's own testimony is to the effect that he always got portions of this brand whenever he demanded delivery from the plaintiff. When confronted on cross-examination with the contrary averment found in his pleadings to the effect that he had demanded delivery without avail, he testified as follows:

"Q. You stated in your answer, sworn to in this case, that Schwartz & Ferry were requested by you during the life of the Polar Bear. contract to make delivery of 36 barrels thereunder, is that true or not?
A. Did I ask to deliver the flour?
Q. Yes, Mr. Lamulle.
A. Yes, sir.
Q. You asked Schwartz & Ferry during the life of the Polar Bear contract to make delivery of 36 barrels?
A. No, I said Schwartz & Ferry never failed to deliver Polar Bear when I ordered."

It is plain from this evidence that plaintiff was never in default as to this contract and that it was able and willing to deliver at all times during the life of this contract, which expired as to time limit for delivery on August 22, 1920. It is contended by counsel for defendant that the forty-day limitation should not be held to have expired until October 18, 1920, or forty days from September 8, 1920, the date the defendant began business as a baker. There is no merit to this contention, for defendant has testified "I did not go into business until September 8th. That contract

of July was expired when I took it over." Defendant must, therefore, be held to have taken the contract as he found it. It appears, however, that defendant availed himself of every indulgence granted him by plaintiff, as is shown by the fact that the last lot of Polar Bear flour taken by him under this contract was on November 18, 1920, or eighty-nine days after the forty-day limitation had expired, or indeed one entire month plus forty days after he began business.

Defendant having admitted in his answer that he was obligated to take and receive the entire order within forty days from the date of the contract, and having failed to establish in his special defense that plaintiff was in default in the life of the contract, it follows that defendant's liability is established and that plaintiff must receive such damages as may be hereinafter awarded.

### CONTRACT NUMBER TWO.

Plaintiff alleged that it sold defendant by another written contract on September 20, 1920, fifty barrels of a brand of flour known as "Velmar", at $13.40 per barrel, to be taken by defendant within a period of thirty to sixty days, and that defendant took six barrels of said Velmar flour on October 13, 1920, leaving a balance of forty-four barrels to be taken by defendant under said contract.

Defendant admitted all the allegations of plaintiff's petition regarding this contract, but in denying that he was bound to take or pay for the remaining forty-four barrels, he pleads with striking inconsistency as follows:

"1. That the breach of the contract was by plaintiff and not by defendant.
2. That the flour was not as represented prior to and immediately before defendant signed the contract, and that it was then and there understood that if the flour was not as represented, that defendant would not be bound to take same, and that the said contract or order would be cancelled."

While defendant in this part of his answer fails to show in what manner plaintiff breached the contract for Velmar flour, it is plain from the averments found in an omnibus paragraph of defendant's pleadings hereinafter noted, that the particular breach referred to in respect to this contract, as well as in respect to the other contracts, was plaintiff's failure to deliver within the life of the contract. If this be the ground of defense in avoidance of liability for damages as claimed, then it cannot be pleaded nor proven that the thing or any part of the thing contracted for was contrary to representations. But defendant has not been forced to elect as upon which of these defenses he would stand, and abundance of testimony has been offered and admitted, over timely objections, in an attempt to establish what is claimed to have been promised by the plaintiff's salesman before and since the signing of the contract.

The written contract is upon the printed form furnished by plaintiff, with the firm's name printed on the top, and at the bottom of the document, just above the signatures of plaintiff's salesman and that of defendant, appear the words in bold type "Subject Confirmation". It is, therefore, conclusive that defendant was charged at the outset with knowledge as to the limited authority of the salesman who took the order for the sale and delivery of this flour. There is nothing in the order or contract which shows that plaintiff or its salesman made any agreement to sell this particular flour on trial or that defendant could return any portion of the flour or cancel the order after trial, as is alleged in defendant's answer. Defendant's evidence is to the effect that verbal promises and representations were so made by plaintiff's salesman. The evidence on this point

is most conflicting and we give little or no weight to it, for the reason that the preponderance of evidence in this case convinces us that no authority, expressed or implied, could have been given the salesman to make any such representations on behalf of his principal, and that defendant, from the contract itself, is bound to have known or understood the limit of the salesman's powers.

Though frequent written demands were made upon the defendant and two personal calls were also made upon him by each member of the plaintiff firm within the life of the contract, whereby defendant was called upon to receive or accept the flour, it does not appear that defendant made any complaint whatever to either member of the firm to the effect that the flour was unsatisfactory. The evidence that such trial was made with unsatisfactory results is of the most uncertain nature, for it is shown by the testimony of defendant's baker that the Velmar flour used by defendant during two days, was mixed with other flour in equal proportions. It could not be held on such evidence as this that the Velmar flour rather than the other flour was defective or unsatisfactory. We find from the record before us that plaintiff was always willing and able to deliver the balance of the Velmar flour; that defendant was put in default within the life of the contract upon his repeated failure to accept or receive the flour, and that defendant's inconsistent defense that the flour was not as represented by plaintiff's salesman, has not been established under the burden of proof imposed upon him by law. Damages as hereinafter awarded plaintiff should be allowed under this contract.

### CONTRACT NUMBER THREE.

Plaintiff alleged that it sold defendant, by written contract, dated September 30, 1920, 100 barrels of Issue flour, at $12.60 per barrel, and by the same contract had also sold to him 25 barrels of Millers No. 1 flour, at $12.60 per barrel, delivery on both contracts to be made within forty-five days; that defendant took, on September 30, 1920, 5 barrels of Millers No. 1 flour, leaving a balance of 100 barrels on the contract for the Issue flour and a balance of 20 barrels on the contract for the Millers No. 1 flour uncalled for and not taken by defendant.

Defendant admitted the facts as alleged by plaintiff in regard to the orders for the brands of flour above mentioned. Further answering plaintiff's contention in regard to the orders for the Issue and the Millers No. 1 flour, defendant specially averred that plaintiff and not defendant violated the agreement between them in regard to said orders in that plaintiff failed to deliver the balance of 100 barrels of Issue flour and the 20 barrels of Millers No. 1 flour within the life of the said order, and that, for that reason, defendant is not in any way liable to plaintiff under the said order.

The evidence shows that shortly after the signing of this contract, defendant called upon plaintiff for delivery of a small portion of the Issue brand, and was told that none was available because of delayed shipments from the mills but that this brand was expected to be received in a few days. No protest was made by defendant against this situation. It is shown beyond peradventure that well within the life of this contract, which would have expired on November 14, 1924, plaintiff was able to deliver this brand as well as Millers No. 1, and that it accordingly, by letters and also by messages sent through its salesman, made frequent demands upon defendant to accept delivery of these brands, as well as the others called for under the four contracts now involved in this suit. Damages under this contract should also, in our opinion, be allowed.

## CONTRACT NUMBER FOUR.

Plaintiff alleged that it sold defendant, by written contract, dated October 4, 1920, 50 barrels of Thunderbolt flour, at $11.75 per barrel, and 50 barrels of I. H. flour, at $12.25 per barrel, to be taken by defendant within 60 days and that defendant failed to take any of said flour.

Defendant admitted the facts as alleged by plaintiff in regard to the order of October 4, 1920. Further answering plaintiff's contentions in respect to these orders, defendant denied liability to plaintiff for two reasons, first, because the Thunderbolt and I. H. brands were represented by plaintiff as suitable to the business of defendant and as good for the making of bread as any other flour used by defendant in his business, and that, as a matter of fact, said flour was inferior and not suitable for the purpose of making bread; and, second, because said flour was not delivered within the life of the said order.

The same inconsistencies in defendant's pleadings regarding these orders are to be found in this contract as in Contract Number Two, already noted. It having been conclusively proven by defendant's own admissions, made on cross-examination, that he had never taken or received any or either of these brands, the contention made in his answer that these brands were inferior or unsuitable falls of its own weight. The letter of November 27, 1920, putting defendant in default as to this contract, was written well within the life of this contract, which ran until December 4, 1920. We finally conclude, therefore, that in this, as well as in the other three contracts, liability has arisen for such damages as may be allowed.

---

The plaintiff, before enumerating in detail the extent of the damages herein claimed, alleged in paragraph 6 of its petition, that it was ready and willing to deliver the whole of the flour covered by the four contracts above noted, and that though it had called upon defendant both verbally and in writing to furnish shipping instructions for delivery under these contracts, defendant wilfully and without right breached said contracts by failing to furnish instructions or to take the flour, as he was bound to do under the contracts.

Without affirming or denying the above allegations, defendant answered this paragraph of plaintiff's petition with an omnibus defense to the entire petition, by averring that plaintiff failed to deliver the whole of the flour called for by the orders during the life of the orders, that is to say, within the time limit fixed by the orders, and that he was not obliged, at the expiration of the period fixed in the orders themselves, to take or to receive deliveries therefor.

Considering the issues raised by the pleadings just noted, this suit has been resolved into questions of law, as follows:

1. Has the defendant, under this law, defaulted upon his contracts?

2. Was the plaintiff obliged to and has it legally placed defendant in default?

3. Has the quantum of damages herein claimed been legally established?

It is plain from the evidence that notwithstanding the fixed dates enumerated in the respective contracts by which deliveries were to be made, on the one hand, by the plaintiff, and to be received, on the other hand, by the defendant, that each of these parties made reciprocal concessions, the one to the other, concerning deliveries. This is shown at the outset by the fact that in the first contract covering the Polar Bear flour, it was not possible for plaintiff to deliver or for defendant to receive the flour within forty days after the date of the contract, to-wit: July 12, 1920. Forty days from this date would have been August 22, 1920, some seventeen days before

September 8, 1920, or the date when defendant opened his place of business. It appears, however, that deliveries were made and received under this contract during the months of September, October and November following. It follows, therefore, that both parties are estopped from pleading against each other the failure of either to offer or to receive the flour within the time for delivery. In the absence of any evidence to the contrary, it is both reasonable and proper to conclude that the conduct of the parties in this reciprocal indulgence observed in the first contract, did establish a tacit understanding that strict enforcement as to time of delivery would not obtain in the subsequent contracts. Therefore, until either party, by written notice or otherwise, called upon the other for reasonable observance of the contracts in respect to delivery or acceptance of delivery, it would be inequitable to hold that either had defaulted in this respect.

In the case of Crescent City Mfg. Co. vs. Slatery, 132 La. 917, 61 South. 870, it was held that:

"The fact that a party entitled to the delivery of lumber under a contract makes various concessions in order to facillitate the other party in making such delivery, affords no reason for releasing such other party from his obligation where nothing has been done to prejudice his rights."

From our close study of the record before us, we are convinced that a preponderance of evidence indicates that the plaintiff was both willing and able at all times to perform its part of the contracts in every one of the orders taken by it, with the one and only temporary exception in respect to the brand of Issue flour, but even in that order, as in all other orders, plaintiff was undoubtedly able and willing to deliver all of the untaken portions of flour upon the expiration date of each contract. Haffner Mfg. o. vs. Lieber Lumber

and Shingle Co., 127 La. 357, 53 South. 646.

In the case of the Polar Bear contract, plaintiff was continuously able to deliver the entire order from the date of the contract up to November 18, 1920, the last day that defendant called for portions of this brand.

The following provisions of the Civil Code are applicable to the case at bar:

"Article 1913. In commutative contracts, where the reciprocal obligations are to be performed at the same time, or the one immediately after the other, the party who wishes to put the other in default, must, at the time and place expressed in or implied by the agreement, offer or perform, as the contract requires, that which on his part was to be performed, otherwise the opposite party will not be legally put in default.

"Article 1931. A contract may be violated either actively, by doing something inconsistent with the obligation it has imposed, or passively, by not doing what was covenanted to be done, or not doing it at the time or in the manner stipulated or implied from the nature of the contract.

"Article 1933. When the breach has been passive only, damages are due from the time that the debtor has been put in default. * * * "

Under all the circumstances of this case, we can find no more formal or effective compliance with the law as just cited than has been observed by the plaintiff firm and which is shown from its several letters written to defendant between November 11, 1920, and January 19, 1921.

In Woodstock Iron Works vs. Standard Pulley Mfg. Co., 115 La. 830, 40 South. 230, where the defendant as purchaser of certain iron delivered at intervals convenient to it, refused on a falling market to receive or give shipping instructions as to the balance, and where the seller placed defendant in default by letter sent six months after the term of the contract the court held that the purchaser had breached his contract in failing to take the entire shipment within the year stipulated, and that it had been

sufficiently placed in default by the letter subsequently mailed.

Again, in the case of Joachams vs. Ong., 45 La. Ann. 1289, 14 South. 247, the seller, after putting the buyer in default, waited seven months before selling the object of the sale, during which time he made no attempt to compel compliance on the part of the purchaser. Notwithstanding this fact and the further fact that there was no evidence before the Court satisfactorily establishing the necessity of waiting to effect a sale, the Court allowed damages to the seller, based upon the contract price less the market value at the time of the re-sale.

The foregoing ruling is supported by abundance of authority as cited in 35 Cyc. 520, par. (b), to-wit:

"In the United States, the rule is well settled that where the goods are in his possession, the seller may, without committing a breach of the contract, re-sell the goods, if the original buyer refuses, without justifiable cause, to receive and pay for them, and may recover the loss sustained in the difference between the contract price and the price received on re-sale. * * * "

In the case of Hays vs. Smith, 1 McGloin, 193, the Court said:

"Where defendants were in default by refusing to accept the property, plaintiffs were not compelled to sell at defendants' risk immediately. Mere delay and indulgence in such a case, incurred in attempts by plaintiff to secure a settlement, cannot avail defendants as a means to avoid liability."

Defendant in the instant case has not pleaded nor has he successfully proven that any attempts were made by him to place the plaintiff in default and there is no evidence before us to justify a conclusion by this Court that plaintiff at any time was unable or unwilling to furnish the flour contracted for. (Milam-Morgan Co., Ltd., vs. Atlantic Fruit Co., 12 Court of Appeal, 306.)

We are of the opinion that the defendant has defaulted upon his respective contracts and that plaintiff has complied with the law in respect to the method in which it should have legally placed defendant in default.

It is contended by counsel for defendant that plaintiff has not shown itself entitled to any damages, and further that the basis of the damage herein claimed is not well founded. In answer to these contentions, we find that the defendant was duly notified by letters addressed to him from the plaintiff firm, as well as from its attorney, that at a date fixed further default on defendant's part would compel plaintiff to sell the untaken portions of the orders on the open market. Ample and reasonable time was given the defendant to comply with his obligation and to relieve the plaintiff of the necessity of resorting to these measures of minimizing its losses. It is plain from the record before us that the market prices received from the ultimate sale of the flour under the untaken orders, were carefully itemized and set forth in plaintiff's petition and in the exhibit setting forth the prices received on the several untaken brands when sold by plaintiff in compliance with this notice.

The defendant has neither alleged nor proven that the market price ultimately received was to his prejudice or that a better price could have been obtained at the time of or subsequent to defendant's default. In the matter of Huntington Easy Payment Company vs. Parsons, 57 S. E. 252, the Court said:

"The burden of proving an omission of duty on the part of plaintiff to mitigate the damages rests upon the defendant." 13 Cyc. 192; James vs. Kibler, 94 Va. 165.

We are of the opinion that the plaintiff should recover in this case for the full amount of damages herein claimed.

It is, therefore, ordered that the judgment herein appealed from be reversed, and that there now be judgment in favor of Schwartz & Ferry and against L. L. Lamulle in the sum of Eleven Hundred and Seventy-three and 60/100 ($1,173.60) Dollars, with legal interest thereon from March 18, 1921, until paid, and for costs in both courts.