The opinion of the court was delivered by
Breaux, J.
In the summer of 1891, through agents in New Orleans, the plaintiff, of Charleroi, Belgium, offered to sell to the defendant a cargo of cement on board of a vessel, which was expected to arrive at the port of New Orleans on or about July 1 of that year.
*1290 The defendant agreed to buy of plaintiff this cargo, of 8372 barrels, at $1.73, and to pay the import duty.
The terms of the sale were payable ninety days from the date the vessel began unloading, and the defendant to give his acceptances only after he was satisfied by a test of samples of the cement. These samples were to be sent by him to an expert in New York so that he would know that it actually tested 350 pounds tensile strength.
Under their agreement, which was verbal, the defendant was to receive possession of the vessel on its arrival, so that he could reduce his expenses and have the cargo discharged at a point of his selection.
, Plaintiff drew drafts for the amount, which drafts were received by J.'W. Seligman & Co., his correspondents in New York.
They were subsequently received from Seligman & Co. by the Louisiana National Bank and were, by the latter, presented to the defendant for payment before the arrival of the vessel in New Orleans.
The total amount of these drafts was $14,486.26.
The letter of advice in which the drafts were enclosed contains the following:
“ Drafts to be accepted due three months from date of arrival of vessel and documents to be delivered upon acceptance.”
Acceptance was refused, the defendant claiming that he was not to accept drafts until the cement could be tested and found satisfactory.
On the 20th of June, 1891, the defendant addressed a letter to the collecting agent declining to accept these drafts, correctly stating the terms of acceptance and payment, and claiming possession of the cement upon arrival of the vessel.
The New York correspondents were informed of the refusal to accept the drafts. In their answer, addressed to the local agent, they state:
“ When we sent you the drafts we asked you not to present them until after arrival of goods; as to the examination (or test) we are not advised, but we would grant the delay.”
All parties agreed that the defendant should, under the contract, have possession of the cargo on the arrival of the vessel without accepting the drafts, before the “ test” had been made and found satisfactory.
*1291 Subsequently the bank, through one of its officers, the law firm for plaintiff represented by a law student in their office, and the defendant, met and discussed the conditions of the sale and delivery of the cement.
The two witnesses for plaintiff, viz.: the bank officer and the law student, testify that the bill of lading was tendered without any reference whatever to the drafts which the defendant was to accept later if the “test” of the cement proved satisfactory.
Before the arrival of the cargo the defendant had made preparations to take possession of the cement and to warehouse it for safekeeping free of charge.
The controlling idea of the defendant at the time obviously was that the contract secured to him not only the possession of the cement, but also the right to sell.
His possession, he declares as.a witness, “ was to include the right to sell.”
The contract proves that until the test was made and found satisfactory the defendant was to have possession; nothing is said as to the right to sell.
The letter in reference to the contract addressed to the plaintiff by his agents here states:
“When the cargo of cement comes here Mr. Ong will have it tested, and as soon as he has returns of tests he will send you his notes. While awaiting the result of the tests he will, however, care for the cement, and when notes are given they will be dated the day the vessel unloads, so that delay in testing does not result in disadvantage to you.”
The testimony of witnesses is that the sale was to be concluded after the test.
The defendant alleges in his answer that it is true that he agreed to purchase from said plaintiff a cargo of cement, ex sailing vessel Auguste, to contain about 8000 barrels.
That he was to pay $1.73 a barrel, and import duty amounting to $2679.04,
That it was expressly agreed that the cargo should be put in his possession, and under his control, so that he might control the landing and storing of the cement.
The pleadings properly do not disclose any such claim as a right to sell, for the facts would not sustain such a claim.
*1292 Moreover, “ things of which the buyer reserves to himself, the view and trial, although the price be agreed upon, are not sold until the buyer be satisfied, which is a kind of suspensive condition of the sale.” R. C. O. 2460.
The right of defendant was therefore a right of possession temporarily, to be followed by a sale if the cement had the strength the vendor said it had. Had he accepted the bill of lading tendered, it would have 'given him control of the landing and storing of the cement.
A negotiable instrument such as a bill of lading for delivery of certain goods to order confers right of possession.
Under the terms of the contract the collecting agent was authorized to deliver this bill of lading; its transfer, as proposed, would have, beyond question, placed the defendant in possession.
The authority of the cashier to deliver the bill of lading was not at any time .the objection, but the right denied him to sell that was asked of this officer and which he declined to grant.
Plaintiff’s witness, the cashier of the Louisiana National Bank, states that on the 26th or 27th of June the bank, through him, tendered the bill of lading to the defendant and informed him that he could accept the drafts after the “test.”
The defendant declined to receive the bill of lading unless he was given permission to sell as much as he could of the cement while awaiting the test.
The witness Wolf, the law student, who acted for plaintiff’s agent in New Orleans, was called on by the defendant regarding this alleged right.
This witness Wolf testified that while the cashier was willing to deliver him the bill of lading without acceptance of the drafts, he was not willing to permit him to sell any part of the cargo while awaiting the test, that this was part of the contract, and that he called upon him to decide this difference.
The witness says: “ I again visited Mr. Janin with him and told Mr. Janin that it was not part of the contract that Mr. Ong should sell any part .of the cement while awaiting the result of the test. Mr. Janin then again offered him the bill of lading without signing the notes or accepting the drafts, but said he would not give him the right to sell.”
Subsequently the defendant wrote to plaintiff that his correspond *1293 ents in New York declined positively to put him in possession unless it was understood that he would make no sales.
On the day preceding the arrival of the vessel the defendant agreed with the cashier and the witness Wolff to write to Seligman & Oo.
The defendant in this letter again applied for a right to sell while awaiting the result of the test.
The two witnesses for plaintiff state that the defendant agreed to await a reply to the letter before deciding as to what he should do.
The day of the arrival of the vessel the defendant wrote to plaintiff ?s agent that he had just been advised of the arrival of the vessel; that the uncertainty of his obtaining possession will occasion loss to him; that he could have arranged to have the vessel landed at a point where the saving to him would have been considerable.
He informed them of the facilities he had for transporting and storing the cement, and expressed a willingness to cancel the contract.
On the next day, when informed by the cashier of the bank of the answer of the New York correspondents declining his proposition in some respects, he refused to have anything further to do with the contract.
The defendant had been offered possession, which he had declined unless he was given right to sell the cement.
This right to sell was insisted upon at all times.
It was the only cause of difference between the parties.
The tender was made, which the defendant did not accept.
He was in default from that date and responsible as a proposed vendee.
The property sold proved of the required strength, and the vendor complied with his obligation to deliver it at this port.
After the arrival of the vessel plaintiff and defendant, through their agents, joined in sending samples of the cement to a Captain Maclay, of New York, an expert, for the purpose of testing its tensile strength. In about three weeks he mailed to them his certificate, showing satisfactory strength. Again the cement was tendered, and again was refused.
There were two errors committed, the first by the defendant in not receiving possession when it was offered to him; the other error was committed by the plaintiff in retaining possession of the property *1294 seven months after the arrival of the cargo without any action on his part to compel compliance and relieve himself of the responsibility for the property.
Plaintiff sues for a loss of $4098.31, occasioned, he alleges, by defendant’s non-compliance with the contract.
With reference to damages. The vendor has a right of action against the purchaser for his breach of contract in noc receiving the goods sold.
The measure of damage, it is generally held, is the difference between the agreed price and the market value of the goods at the time they were tendered and refused, in addition to the costs and other damages.
There is no evidence before the court satisfactorily establishing the necessity of waiting to effect a sale.
The sale-should have been made at the earliest practicable period after an absolute refusal to accept.
The market value of the goods at the time of the tender is not proven.
The price paid for them seven months after is apparently a fair value.
By agreement, without prejudice to the rights of either party, the cargo was sold to plaintiff for $1.90 a barrel cash, to be deducted in the event plaintiff recovered judgment.
The perplexing and exceptional character of this case has forced upon us the conclusion that the full measure of damages should not be allowed.
The facts and circumstances are such that we have determined to limit the amount to the actual sum promised by the defendant, and to thus minimize the damages:
Amount price of tlie cement...........................................................$li,483 56
Import duty....................................................................................... 2,679 83 — $17,163 39
Less price at which sold...................................................................$15,906 80
It is therefore ordered and. decreed that the judgment of the lower court is avoided and reversed, and it is now ordered and decreed that there be judgment in favor of the plaintiff for the sum of $17,163.39, subject to a credit of $15,906.80, with legal interest on the amount of the judgment from judicial demand, and that defendant pay the costs of both courts.
Parlange, J., having been of counsel, recuses himself in this case.
Rehearing refused.