LECHE, J.
Plaintiff appeals from a judgment refusing its demand for damages aL leged to have been suffered by reason of defendant’s violation of a contract for the sale and delivery of rice.
Plaintiff is domiciled in the city of Philadelphia, and defendants are engaged in rice milling in the city of Crowley, in this state. On October 10,1916, defendants bound themselves to sell and deliver to plaintiff, f. o. b. cars in Crowley, 5,000 pockets of rice at 8% cents per pound, one-half to be shipped during the month of December, 1916, and the rest to be shipped during the month of January, 1917. Defendants shipped 1,771 pockets out of the total amount stipulated in the contract, and, ■ for reasons which, in answer, they allege to be justified, failed to make further shipments.
Plaintiff sues for damages in the sum of $4,231.25, composed of (1) profit which it would have made in the sum of $887.98, (2) damages which it paid to one of its customers on account of nondelivery, $3,148.27, and (3) expenses of its representative to Crowley, $195.
The district court refused to grant its demand, and hence the present appeal.
The reasons advanced by defendants for failure to ship are substantially that plaintiff failed to send sufficient shipping directions, that the shipping directions which plaintiff did give were erroneous, that there was a shortage of railroad cars, and that an embargo on rice shipments by water, from Texas and Louisiana to New York and points beyond, was established by the Southern *1097 Pacific from November 13, 1916, to December 21, 1916, and from January 13, 1917, to March 3, 1917.
[1, 2] Taking up these defenses in reverse order, the embargo placed by the Southern Pacific Company on transportation by water cannot serve as a legal excuse for defendants’ failure to deliver at Crowley, f. o. b. cars, for the reason that there was no stipulation in the contract requiring that shipments should be made by ocean steamers. Plaintiff was to pay freight from Crowley, and defendants, in the absence of any contrary instructions from plaintiff, were at liberty and it was their bounden duty to ship by the most available route, regardless of slight differences in freight rates. Nor could the shortage of railroad freight cars Justify or excuse defendants’ failure to make delivery. The scarcity of cars during the harvest season is of common occurrence throughout the country, and during the late war transportation of freight was exceptionally subject to unavoidable delays. That is not, however, pretended to constitute inevitable accident or irresistible force so as to excuse nonperformance under C. C. art. 2120, nor does such an event justify the application of the doctrine of “commercial frustration.”
On November 3, 1916, plaintiff wrote defendants, informing them that it had sold to the Reeves Parvin Company, New York, the 5,000 bags of rice which it had bought for December and January delivery, and asking defendants the probable dates of shipments. In a postscript plaintiff added:
“Kindly state positively what route you will ship by — Morgan Line or Southern Pacific.”
This letter remained unanswered, so that on December 2, one month later, it again wrote, inquiring about these shipments. Then there were several telegrams and a letter between the parties in regard to the shipment of 1,000 pockets of rice to Europe by way of New Orleans, not having any bearing upon the question at issue. The next communication in regard to deliveries under the contract was from defendants to plaintiff under date of December 26, 1916, wherein defendants announced that they had shipped 1,000 pockets to New York, and in this letter they say:
“Regret it will be impossible for us to ship any more this month,” etc.
Seven hundred and seventy-one pockets additional were shipped in January. About the midfile of February several telegrams and letters were again exchanged between the parties, and1, on February 17, 1917, defendants acknowledged that they still owed plaintiff 3,229 pockets, pleading their inability to deliver on account of embargo by ocean steamers. Finally, on February 27, 1917, defendants wired their inability to comply with the contract unless terms of payment were changed.
[3] In argument defendants attempt to justify in part their failure to deliver, by reason of the postscript at the bottom of plaintiff’s letter of November 3d, inquiring whether defendants would ship by Morgan Line or Southern Pacific. The Morgan Line is under the control of the Southern Pacific Company; so that the Morgan Line is part of and the same ocean transportation company as the Southern Pacific. We do not see in this any valid reason for defendants’ failure to act. Defendants might have at least informed plaintiff of this error, but they did not even answer this letter. While it may be true that defendants were hampered by many difficulties, we find no sufficient reason or legal excuse to exonerate them from fulfilling their contract, and we are of the opinion that they are liable in damages for failure to perform.
[4] Plaintiff claims as damages, first, for *1099 loss of profit on 3,229 bags of rice at 27.5 cents per bag, $887.98. It appears from the evidence that plaintiff had contracted to pay for the rice delivered in Orowley 3.375 cents per pound, and that it had contracted to sell this same rice for 3.65 cents per pound in New York; hence the claim that it would have made a profit of 27.5 cents per bag (of 100 pounds); but plaintiff fails to take into account that it would have had to pay freight from Orowley to New York. Its profit would therefore have been diminished by the payment of such freight charges; but, as the record does not show what these freight charges would have amounted to, it is impossible to ascertain even upon that basis the profit it would have Inade.
[5] Plaintiff claims next that it reimbursed Reeves Parvin Company $3,14S.27, the difference which the latter had to pay on the New York market for 3,229 bags of rice above the rate of 3.65 cents per pound fixed in its contract with Reeves Parvin Company, and that it is entitled to reimbursement of this loss from the defendants. This sum of $3,148.27 is said to represent the actual additional cost of 3,229 bags of rice on the New York market over and above the price at which plaintiff had agreed to sell to Reeves Parvin Company. The date upon which Reeves Parvin Company bought in New York is not definitely shownbut, assuming it to be the same as that of plaintiff’s cheek, March 9, 1917, the market price of rice had then already taken an upward trend. The record also fails to show the market price of rice at Crowley on February 27, 1917, the date upon which defendants defaulted in the performance of their contract. Both justice and equity forbid that the quantum of damages due by defendants, should be based upon the prices prevailing in a distant market, and at a time subsequent to that at which delivery should have been made under the contract.
[6] In the case of Hafner Mfg. Co. v. Lieber Lumber & Shingle Co., 127 La. 348, 53 South. 646, we held, in effect, that, unless it appears that the contract sued on was made with reference to another contract by the buyer with third persons, to the knowledge of the seller, the buyer’s liability under such contract could not be considered as the measure of damages in a suit against the seller for nonperformance. In this case the contract between plaintiff and defendants was made October 10, 1916, without reference to the contract by plaintiff with Reeves Parvin Company; hence plaintiff’s liability on the latter contract should not be considered as the proper measure of damages.
The agreement between plaintiff and defendants fixed the time and place for delivery during the months of December and January at Crowley, La., and defendants would therefore under these terms have had until January 31st to make delivery, but the telegrams and letters exchanged between the parties show that plaintiff indulged defendants until February 27, 1917, when defendants declared their inability to comply, and therefore their final failure to perform their obligation took place on that date, February 27, 1917.
[7] In the case of Crescent City Mfg. Co. v. Slattery, 132 La. 917, 61 South. 870, it was held that the proper time at which the market value for the purpose of an action in damages for nondelivery should be fixed is that at which final failure of execution takes place when the time fixed in the contract has been extended by consent of parties.
[8] It has uniformly been held by this court that damages for the inexecution of a contract of this kind, in the absence of bad faith, are those which were in the contemplation of the parties when the contract was made, and that such damages represent the difference between the contract price of the *1101 thing sold and the market value at the and place at which it was to have been delivered. See the two eases cited above, and also Robinson Lumber Co. v. Burton, 128 La. 120, 54 South. 582. As we find no evidence in this record showing the value of rice of the grade and quality called for in the contract, on the day after final failure to perform, February 28, 1917, either in Crowley or other markets in close proximity to the rice-growing section in Louisiana and Texas, and as it is thus impossible to fix the amount of damages to which plaintiff is entitled, this case will, in furtherance of justice, be remanded for the purpose of enabling the parties to produce evidence for that purpose.
It is therefore ordered that the judgment appealed from be set aside and avoided, that this cause be remanded to the district court for the parish of Acadia, there to be reopened for the purpose of enabling the parties to produce evidence showing the market value of rice of the grade and quality and in the quantity called for in the contract of October 10, 1916, said market value to be of date February 28, 1917, in Crowley, La., or other rice market in close proximity to the rice-growing sections of Louisiana and Texas. It is further ordered that costs of appeal be paid by defendants and appellees; other costs to await final determination of the case.
Rehearing refused by Division B, composed of Justices O’NIELL, LAND, and BAKER.