(111 So. 661)

No. 26148.

MUTUAL RICE CO. OF LOUISIANA v. STAR BOTTLING WORKS, Limited.

(Jan. 3, 1927. Rehearing Denied Feb. 28, 1927.)

*(Syllabus by Editorial Staff.)*

1. Sales ⬅22(3)—Negotiations for sale never became completed contract where buyer never accepted seller's terms requiring letter of credit, and rejected final offer.

Where seller demanded that buyer furnish letter of credit before seller would make sugar sale, and buyer refused and later rejected seller's offer to sell without such letter of credit, the negotiations never became a complete contract.

2. Sales ⬅384(7)—Damages held not recoverable by seller for breach of contract for sugar sale, where loss was avoidable by sale on open market.

Where seller might have avoided loss following buyer's breach of contract for the sale of sugar by selling the sugar on the open market at the time and place of delivery, damages *held* not recoverable from buyer.

3. Sales ⬅384(2)—Seller's damage for buyer's breach of sales contract is difference between contract price and market price at time and place of delivery.

The measure of damages to which a seller is entitled when buyer breaches the contract of sale is the difference between the contract price and the price at which, with reasonable effort, the seller might have sold the goods at the time and place of delivery.

4. Sales ⬅418(3)—Measure of buyer's damages for seller's contract breach is difference between contract price and market price at time and place of delivery.

The measure of damages to which a buyer is entitled, when seller refuses to sell as per contract, is the difference between the contract price and market price at which, with reasonable diligence, the buyer might have procured similar goods at the time and place of delivery.

5. Sales ⬅378—In seller's suit for breach of contract, defense that loss was avoidable by sale on open market need not be specially pleaded.

In suit by seller for buyer's breach of contract for the sale of sugar, it is not necessary that the buyer plead specially the defense that the seller could and should have avoided loss by selling sugar rejected on the open market.

6. Sales ⬅381—Burden of proving that loss following buyer's breach of sales contract was unavoidable is upon seller.

The burden of proof, in a case where the buyer has breached a contract for the sale of sugar, is upon the seller, not only to prove his loss, but to show that it could not have been avoided or lessened by ordinary care on his part.

7. Sales ⬅384(7)—Seller's optional right to demand specific performance, under Code provisions, when buyer breaches sales contract, held inapplicable to sale of sugar but seller must attempt to lighten loss by resale (Civ. Code, arts. 2462, 2551, 2556).

The optional right of the seller to demand specific performance of a sales contract under Civ. Code, arts. 2462, 2551, 2556, when the buyer breaches the contract, is not applicable to the sale of merchantable goods like sugar; seller must attempt resale in such case.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Suit by the Mutual Rice Company of Louisiana against the Star Bottling Works, Limited. From a judgment for defendant, plaintiff appeals. Affirmed.

J. S. Atkinson and Alex F. Smith, both of Shreveport, and Monroe & Lemann, of New Orleans, for appellant.

Blanchard, Goldstein & Walker, of Shreveport, for appellee.

O'NIELL, C. J. This is an appeal from a judgment rejecting the plaintiff's demand for damages for an alleged breach of contract on the part of the defendant, to accept and pay for two carloads of sugar shipped by the plaintiff from Houma, La., to the defendant, in Shreveport, La. The damages claimed amount to $10,915.99, being $9,900 loss in price, or difference between the alleged contract price and the price for which the plaintiff sold the sugar after the defendant refused to accept it, $899.84 for freight and demurrage, and $116.15 for telegrams, protests fees,

and interest on the sight draft drawn by the plaintiff on the defendant for the alleged contract price of the sugar.

The appellee defends on two alternative grounds, viz.: First, that there was not a completed contract for the sale of the sugar; and, second, that, if there was a completed contract, it was for delivery of the sugar f. o. b. cars at the plantation at Houma, La., at which place there was a ready market and demand for the sugar at a price slightly higher than the alleged contract price at the time when and for several weeks after defendant notified plaintiff that defendant would not accept the sugar, and, therefore, if the plaintiff sustained a loss, it was because plaintiff insisted upon shipping the sugar to Shreveport instead of selling it on the open market, f. o. b. cars at the plantation at Houma.

The negotiations for the two carloads of sugar were separate transactions, both beginning in April, 1920. The first carload, being 600 bags of sugar containing 100 pounds each, was quoted by a firm of brokers, for the plaintiff, in New Orleans, to a broker in Vicksburg, Miss., representing the defendant, the quotation being $27 per 100 pounds, f. o. b. plantation at Houma, La. The second carload, being also 600 bags containing 100 pounds each, was quoted directly by the plaintiff to the broker in Vicksburg, at $26.75 per 100 pounds, f. o. b. plantation at Houma, La. The first quotation was for shipment in May or June, 1920, and the second was for shipment in June. In his acceptance of the first offer, the Vicksburg broker wrote that, as soon as he would receive confirmation of the transaction, he would take up the matter with the buyer, Star Bottling Works (which he called the Coca-Cola Company), and arrange in regard to the credit. In the letter of confirmation written by the plaintiff, four days later, the latter required that the buyer should furnish a

bank's irrevocable letter of credit, authorizing the seller to draw on the bank for account of the buyer sight drafts to the amount of the invoice, with bills of lading attached dated prior to July 1, 1920. The same stipulation was made in the plaintiff's confirmation of the transaction relating to the second car of sugar. The defendant was unwilling and finally refused to furnish a bank's letter of credit for either transaction, but was willing to accept the shipment if made to shipper's order with bills of lading attached to sight draft on defendant for the invoice price of the sugar. There was much correspondence by telegrams and letters, in which the plaintiff threatened to withdraw the offers unless the defendant would furnish the letters of credit, and in which the defendant tried to persuade the plaintiff to waive the stipulation for letters of credit. On the 13th of May, the New Orleans brokers wrote to the defendant saying that they had finally persuaded the plaintiff to waive the requirement of a letter of credit for the car of sugar at 27 cents per pound; to which the defendant replied on the 18th of May that the company had made other arrangements for its supply of sugar and would not accept the shipment. It appears that the New Orleans brokers did not receive defendant's letter of the 18th of May, and on the 14th of June wrote to defendant saying that the carload of sugar at 27 cents f. o. b. plantation would go forward in a few days, consigned to shipper's order with bill of lading attached to sight draft for the invoice price; to which defendant replied by telegram on the 16th of June, saying that plaintiff should not ship the sugar and that defendant would not pay the draft or accept the shipment, and on the same day defendant confirmed the telegram by letter. On the next day the New Orleans brokers wrote to defendant, urging the latter to accept the shipment and asking for an early reply. Defendant replied

on the 23d of June, insisting that the company would not accept the shipment or honor the draft. Meantime—that is, on the 24th of May—the plaintiff wrote to the Vicksburg broker, saying that plaintiff had had the New Orleans brokers advise the Vicksburg broker that the 1,200 bags of sugar would be shipped and sight draft drawn with bill of lading attached, and saying that plaintiff had not received an acknowledgment that the Vicksburg broker had received the information, and asking to be advised by return mail. On the next day, the Vicksburg broker wrote to plaintiff, saying that no letter had been received from the New Orleans brokers advising that plaintiff was willing to ship the sugar and send bill of lading attached to sight draft on defendant for the invoice price, and saying that he (the Vicksburg broker) was taking the matter up with defendant and would advise plaintiff immediately on receipt of a reply from defendant. The plaintiff was informed, if not by defendant's letter of the 18th of May, which perhaps went astray, surely by defendant's telegram and letter of confirmation of the 16th of June, and the letter of the 23d of June, that defendant had called off the negotiations and would not accept or pay for the sugar if shipped to Shreveport. With that knowledge, plaintiff shipped the two cars of sugar on or about the 28th of June, and drew a sight draft on defendant for the invoice price with bill of lading attached.

The first witness called by and on behalf of the plaintiff, on the trial of the case, was a member of the firm of brokers in New Orleans, who negotiated the transaction relating to the first carload of sugar; and the second witness was the treasurer and general manager, during 1920, of the plaintiff corporation. Both witnesses testified that during all of the month of June, and until the middle or latter part of July, 1920, there was a ready market and demand in New Orleans for the sugar at prices ranging from 27 cents to 28 cents per pound, f. o. b. plantation at Houma, and that plaintiff sold at 28 cents in June and July, without previous booking, some of the same lot of sugar from which these two carloads came. The evidence leaves no doubt—and it is hardly disputed—that plaintiff could have sold the two carloads of sugar on the New Orleans market, f. o. b. plantation at Houma, at a price higher than the alleged contract price, at any time within at least three weeks after plaintiff was informed that defendant would not accept or pay for the shipment to Shreveport. According to the allegations of plaintiff's petition—and the alleged contract—the sugar was to be delivered not at Shreveport but f. o. b. plantation at Houma. Plaintiff's loss was caused entirely by plaintiff's determination to ship the sugar to Shreveport rather than sell it on the New Orleans market, f. o. b. plantation, after being informed that defendant would not accept or pay for the shipment. There was no demand for such a quantity of sugar in Shreveport, perhaps because every buyer in large quantities, like the defendant, had his full quota under the government's restrictions then being enforced. One of the two carloads was shipped from Shreveport to Alexandria, La., and sold there, and the other carload was shipped to and sold in Jacksonville, Fla.

[1-4] Our opinion is that the negotiations for the sale of the sugar had not become a completed contract, which either party could have insisted should be performed, when the defendant notified the plaintiff, before shipment, that the negotiations were off. Assuming, however, for sake of argument, that the negotiations had reached that stage where the defendant had no right to recede, the plaintiff cannot recover damages for the breach of contract, because, according to the evidence, plaintiff could have avoided a loss very easily by selling the sugar on the New Orleans market, f. o. b. Houma, the place of delivery. When a buyer breaches the con-

tract of sale, the measure of damages which the seller is entitled to is the difference between the price stipulated in the contract and the market price at which the goods can be readily sold at the time and place of delivery; and it is the duty of the seller to minimize his loss by reselling the goods as soon as practicable after the buyer has refused to accept. Bartley v. City of New Orleans, 30 La. Ann. 264; Jochams v. Ong, 45 La. Ann. 1289, 14 So. 247; Robinson Lumber Co. v. Burton, 128 La. 120, 54 So. 582; Bonsor & Co. v. Simon Rice Milling Co., 151 La. 1094, 92 So. 711; National Wholesale Grocery Co. v. Simon Rice Milling Co., 152 La. 1, 92 So. 713; Garrison & Son v. Sherill Hardwood Lumber Co., 156 La. 147, 100 So. 253; Wertham Bag Co. v. Roanoke Mercantile Co., 157 La. 312, 102 So. 412; Burglass v. J. C. Healy Co., 159 La. 393, 105 So. 384; 24 R. C. L. 109 and 112. The measure of damages is the same, according to the decisions cited, when the seller breaches the contract, the measure of damages due to the buyer being the difference between the contract price and the market price at the time when and place where the delivery should have been made.

[5, 6] It is argued for the appellant that the appellee's alternative plea, that appellant could and should have avoided a loss by selling the sugar on the open market, is a special defense and should have been specially pleaded. That is not consistent with the rule which is well established—and recognized or assumed as a matter of course in the decisions which we have cited—that the burden of proof in a case like this is on the plaintiff, not only to prove the extent of his loss but to prove also that it was the direct consequence of the breach of contract and that it could not have been avoided or lessened by ordinary care on the plaintiff's part. It was therefore sufficient for the defendant, in answering the suit, merely to deny—as defendant did deny—the plaintiff's allegations concerning the loss.

[7] It is argued on behalf of appellant that, according to articles 2551, 2556, and 2462 of the Civil Code, when a buyer breaches the contract of sale, the seller has the option either to resell the property and bring an action in damages for the difference between the contract price and the price actually received, or to demand specific performance by tendering the property at the stipulated time and place of delivery and suing for the contract price. The right to demand specific performance in such cases is not appropriate to a sale of merchantable goods, like sugar, which is quoted every day on the commercial exchanges throughout the world, because in such case it is the duty of the seller to lighten his loss—or avoid it altogether if possible—by selling the goods on the open market as soon as practicable after the contract has been breached. In this case, however, the plaintiff was not satisfied with delivering or tendering the sugar at the stipulated place of delivery—f. o. b. plantation at Houma—but insisted upon shipping it to Shreveport, knowing that the shipment would not be accepted; and plaintiff's loss resulted, not from defendant's refusal to accept the sugar f. o. b. plantation at Houma, but from plaintiff's being unwilling to sell it there on the open market.

The judgment is affirmed.

ST. PAUL, J., concurs in the decree.