No. 2993

Second Circuit

---

## TALLULAH COTTON OIL CO. v. McLEMORE BROTHERS

---

(December 21, 1927. Opinion and Decree.)

---

*(Syllabus by the Editor)*

1. **Louisiana Digest—Sales—Par. 18, 22, 68.**

A written confirmation of sale marked "accepted" by the purchaser is a contract of sale not subject to cancellation.

2. **Louisiana Digest—Sales—Par. 44, 45, 130; Damages—Par. 71.**

A letter from purchaser to vendor authorizing him to sell the rest of the merchandise contracted for to the best advantage does not operate a release of the purchaser from the contract, but makes him liable in damages for any loss sustained by the vendor as a result of purchaser's breach of contract.

**3. Louisiana Digest—Damages—Par. 69.**

Where the buyer refused to accept goods to be delivered at a future date the quantum of damages is the difference between the price stipulated in the contract and that obtained for the goods provided they were sold to the best advantage at the time vendor was notified of the breach of contract by the buyer.

Appeal from the Fifth Judicial District Court of Louisiana, Parish of Richland. Hon. John R. McIntosh, Judge.

Action by Tallulah Cotton Oil Company against McLemore Brothers.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Smith & Hunt, of Rayville, attorneys for plaintiff, appellant.

Tobin R. Hodge, of Rayville, attorney for defendant, appellee.

ODOM, J. On September 20, 1924, plaintiff sold to defendants ten car loads of cotton seed hulls and meal, at $42.50 per ton for the meal and $14.50 per ton for the hulls, to be delivered at Rayville, Louisiana, as ordered out by defendants up to December 31st, 1925; and on September 30th, 1924, it sold to defendants five cars to be delivered at Winnsboro, Louisiana; shipments and deliveries in each case to be made as ordered by. defendants.

The defendants ordered, received and paid for only a portion of the hulls and meal which they had purchased, leaving in the hands of plaintiff 112½ tons of hulls and 37½ tons of meal.

The market declined, and that portion of the hulls and meal not taken by defendants was sold by plaintiff, at $11.00 per ton for the hulls and $37.10 per ton for the meal, or a total of $688.13 less than the amount which plaintiff would have received if defendants had taken and paid for the hulls and meal at . the contract price.

Plaintiff brings this suit to recover that amount. Its demands were rejected by the lower court and it prosecutes this appeal.

OPINION

Plaintiff's suit is grounded upon the proposition that it sold to defendants a certain quantity of cotton seed hulls and meal at a stipulated price per ton and that defendant failed to take and receive the entire quantity, and that upon defendants' default upon the contract it sold in the open market and to the best advantage that portion of the hulls and meal refused by defendants, the sale being made for less than defendants had agreed to pay, and that it thereby sustained a loss of $688.13, for which amount it brings this suit.

It is undisputed that defendants paid for all the hulls and meal they received as per the contract.

Defendants admit that they signed the two orders or contracts for hulls and meal as alleged by plaintiff, and admit that they accepted and paid for several contracts thereof, but defend on the ground that the contract was cancelled, insofar as the balance was concerned, on August 3, 1925, and that on that date, by specific agreement with plaintiff, they were relieved of the obligation to take any more hulls and meal.

According to our view, the case hinges on the question whether, as a matter of fact, the contract was cancelled on August 3, 1925, and the defendants re-

lieved from their obligation to take the undelivered portion of the hulls and meal.

Counsel for defendants, in brief, makes some contention that they were never bound to take the full quantity of hulls and meal stipulated in the two instruments signed by them, for the reason that said instruments were no more than orders for the goods and were subject to cancellation by defendants at will.

Our conclusion, however, is that there was a sale of the goods.

The first instrument signed by defendants is styled "Confirmation of Sale", is on a printed form with blanks to be filled in, is dated September 20, 1924, addressed to "Messrs. McLemore Brothers, Rayville, La.", and reads, in part, as follows:

"Gentlemen: We confirm the following sale made this day to you: Quantity:"

The above is printed. Then, following, is inserted, with typewriter:

"10—20 ton cars. Product cotton seed meal and hulls sacked.
"Quality 8% ammonia meal. Price—$14.50 per ton hulls—$42.50 per ton meal —delivered Rayville.
"Terms_____Shipment up to December 31st."

At the bottom of the instrument is printed the name: "J. V. Wright, Lessee"; but he did not sign the instrument.

This instrument was sent to defendants who endorsed thereon, at the bottom:

"Accepted: McLemore Brothers. By H. E. McLemore."

And returned it to plaintiff.

The second instrument, dated September 30, 1924, is identical with the first, except as to date and quantity ordered, and is likewise accepted by defendants.

In addition to the above, we find in the record the following letter:

"Rayville, La., September 29th, 1924.
"Mr. J. V. Wright, Tallulah, La.
"Dear Sir: In answer to yours of 27th inst. we wish to state that we will take the additional five cars on the terms stated, delivered to Winnsboro, La. Please fix us a contract and send over for our signature, using the same proportions of hulls and meal as in our other contract. We will send you the specifications for first car upon returning the contract.
"Yours very truly,
"McLemore Brothers, By C. McLemore."

In response to the letter the instrument dated September 30th was made out and forwarded to defendants and accepted by them, as already stated. Both documents were made out and forwarded to defendants read, as stated:

"We confirm the following sale made this day to you:"

These instruments were not signed by Wright—his name was printed at the bottom thereof—and for that reason defendants contend that there was no completed contract.

We do not concur in this view.

It is undisputed that when Wright received the orders from defendants he at once made out and forwarded to them said instruments, which were accepted, and that following the accepted confirmations both parties treated the transactions as closed contracts of sale; for plaintiff shipped to defendants hulls and meal as ordered and defendants received and paid for them as per the agreement.

Defendants in their letter of September 29th asked that a contract be sent over, which was done, and they accepted it as written, and stated in the letter,

"using the same proportions of hulls and meal as in our other contract".

It is quite evident that both plaintiff and defendants considered that there was a contract of sale. Whether the written confirmation of the sale was signed by plaintiff or not makes no difference—the fact is that there was a contract.

Article 1762 of the Civil Code reads as follows:

"The contract must not be confounded with the instrument in writing by which it is witnessed. The contract may subsist, although the written act may, for some defect, be declared void; and the written act may be good and authentic, although the contract it witnesses be illegal. The contract itself is only void for some cause or defect determined by law."

The defendants having ordered the goods and their orders having been accepted by plaintiff, the sale was complete.

Furthermore the defendants' answer, we think, clearly admits the validity of the contract of sale.

They set up, as a special defense, that early in the year 1925 the wholesale business owned and operated by them was destroyed by fire and that on account of the loss thereby sustained by them they decided to discontinue said wholesale business and that—

"long before said fire your defendants ordered several car loads of meal and hulls from the plaintiff, the most of which had not been paid for, and that shortly after the fire above referred to, one Mr. Yeager representing J. V. Wright, lessee, called upon defendants with reference to the contract attached to plaintiff's petition as well as a balance due plaintiff for meal and hulls already delivered. That said Yeager insisted in payment and proposed to the defendant that if it would pay the account at once your defendant would *have the right to cancel its order for meal and hulls*, which defendant did, and according

to instructions from Yeager wrote a letter to defendant (plaintiff) authorizing the plaintiff to sell said meal and hulls *covered by the contract* on the open market. The said Yeager said that the defendant (plaintiff) needed such a letter to complete its records."

It will be noted that they refer to the contract which they had with plaintiff and allege that they cancelled it. They unquestionably recognized up to that time that they were bound, for they allege that Yeager, representing plaintiff—

"proposed to defendant that if it would pay the account at once your defendant would have a right to cancel its order for meal and hulls which defendant did."

So far as the record discloses, defendants had never contended that they were not bound under a contract to take the full amount of meal and hulls ordered, but they now contend that the order was cancelled at the suggestion of Yeager, and they refer to the letter which they wrote on August 3rd as evidence of the cancellation. That letter reads as follows:

"Rayville, La., August 3rd, 1925.
"J. V. Wright, Lessee,
        "Tallulah, La.

"Dear Sir: This will authorize you to sell the rest of our contract with you on hulls and meal to the best advantage.
        "Your very truly,
                "McLEMORE BROTHERS,
                        "By C. McLemore."

Instead of this letter showing a cancellation of the contract and a release by *plaintiff, it shows to the contrary.* Admittedly the market for hulls and meal had declined and was still declining. Defendants could not handle the undelivered portion of the order because its wholesale business had been discontinued on account of the loss by fire, and in order to minimize their loss defendants authorized plaintiff—

"to sell the rest of our contract with you on hulls and meal to the best advantage."

Mr. Maxwell Yerger and Mr. George Yerger, both representing plaintiff, testified that they were both present when the letter was written and signed, that it was written by Mr. R. R. Dennis, who represented defendants, and signed by defendants, and that defendants agreed that plaintiff should sell the hulls and meal to the best advantage and that they would pay the loss, and authorized plaintiff to draw for the amount of the loss with invoice attached; and as authority for making the sale for defendants they obtained the above letter.

Mr. C. McLemore admitted that he signed the letter, but said it was the understanding that the order was to be cancelled and that he understood that the letter which Dennis had written and he had signed cancelled the order.

The positive and emphatic testimony of the Yeagers is that there was no agreement to cancel but an agreement that plaintiff would sell the remaining portion of the hulls and meal to the best advantage for account of defendants, who agreed to pay the loss.

The letter which defendants signed is in full accord with this testimony and completely overthrows C. McLemore's contention that the contract was cancelled and defendants released.

Our learned brother of the District Court assigned no written reasons for his judgment rejecting plaintiff's demands and we are at a loss to know why he did so.

As to the quantum of damages which may be recovered in a case of this kind, the law is specifically stated in the case of Mutual Rice Co. of Louisiana vs. Star Bottling Works, Limited, 163 La. 159 (111 South. 661), as follows:

"When a buyer breaches the contract of sale, the measure of damages which the seller is entitled to is the difference between the price stipulated in the contract and the market price at which the goods can be readily sold at the time and place of delivery; and it is the duty of the seller to minimize his loss by reselling the goods as soon as practicable after the buyer has refused to accept."

In the case at bar, the buyer breached the contract and refused the goods. The seller sold the goods in open market at the best price obtainable. The difference between the price stipulated in the contract and that obtained for the goods was $688.13, the amount sued for. This is the amount of its damage.

But defendants' counsel in brief contends that the goods were to be delivered by December 31st, 1925, and that the price which might have been obtained on that date should be considered in fixing the measure of damage.

That would be true if the buyer had breached the contract and had refused to accept the goods on that date. Such was not the case. The goods were to be shipped out as ordered by defendants. Plaintiff was obligated to deliver the entire order by December 31st provided defendants ordered the shipment by that time; but there is nothing to indicate that defendants' failure to order out the goods by that time should constitute a breach of the contract. On the contrary, defendants were to pay 50 cents per ton extra for meal and 25 cents per ton extra for hulls for each month after December 31st, for storage in case plaintiff had to hold the goods.

The contract was not breached until August, 1925, and immediately thereafter plaintiff sold the goods left on its hands.

The amount of the loss is not disputed.

It is therefore ordered, adjudged and decreed that the judgment appealed from be reversed, and it is now ordered and decreed that the plaintiff, Tallulah Cotton Oil Company, have judgment against the commercial firm of McLemore Brothers and J. W. McLemore, Cage McLemore, E. M. McLemore, and H. E. McLemore, the individual members of said firm, in solido, for the sum of six hundred eighty-eight and 13-100 dollars ($688.13) together with 5% per annum interest from judicial demand until paid and all costs.