DAWKINS, J.
This is an action in damages, ex contractu, for the sum of $5,977.49, alleged to have been suffered by the plaintiff on account of the failure of defendant to deliver, according to contract, five carloads of secondhand sugar bags.
An exception of no cause of action was filed by defendant, but apparently never submitted or passed upon by the lower court.
The answer admits the contract, but avers that on account of circumstances beyond its control, defendant was not able at the time to deliver the shipment as agreed, nor was it under any obligation to deliver when called upon by plaintiff. Defendant otherwise denies the allegations of the petition, and avers that it made a timely tender of the bags called for in the contract, but that plaintiff declined to receive them.
There was judgment in the court below for the full amount claimed, and- the defendant has appealed.
. The following instrument is the basis of plaintiff’s claim, to wit:
“Eagle Bag Corporation.
“Order No.-.
“Date, 4/8, 1914.
“Sold Fred Tanner.
“City, New Orleans, La.
“When ship: During the month of August, 1914.
“Terms: Net cash, subject to revision by our credit department.
“All remittances must be made in New Tork or New Orleans exchange.
“5 carloads, 30,000 lbs. each, 8. H. No. 18 blue stripe sugar bags, 29x48 — f. o. b. Sugarland, Tex., @ 11 %c per bag.
“Sight draft attached to B/L.
“Subject to confirmation.
“If by reason of fire, strikes, loss of goods át sea, or accidents or any other delay or circumstances beyond our control, we be delayed in or prevented from making shipment, then at our option, this contract becomes null and void.
“It is hereby expressly understood and agreed that no verbal statement or agreement made by any agent or representative of either party, shall be of any effect, as this document embodies the entire contract.
“Our responsibility ceases upon delivery of goods to transportation company.
“Eagle Bag Corporation,
“By E. J. Filleul.
“Accepted Apr. 8, 1914, by Fred Tanner.”
Thereafter, the defendant sent the plaintiff the following letter of confirmation:
“New Orleans, La., April 9, 1914.
“Mr. Fred Tanner, 821 Union St., City — Dear Sir: We beg to confirm contract made with you by our Mr. Filleul dated April 8, 1914.
“Thanking you for this order, and hoping to have the pleasure of serving you throughout the patch season, we are,
“Tours very truly, Eagle Bag Corporation, “E. J. F.”
*505 On August 17, 1914, the plaintiff wrote the defendant requesting that it forward the five carloads of bags on August 20th, “To your order notify me at New Orleans, and your draft will be honored on presentation.” On the same day, defendant wrote in reply (quoting only the body of the letter) as follows:
“Dear Sir: Von are no doubt aware of the present prevailing conditions and we beg to refer you to our contracts made with us June 8th, 1914, and April 8th, 1914, to the following clauses in same:
“ ‘If by reason of fire, strikes, loss of goods at sea, or accidents, or any other delay, or circumstances, beyond our control, we be delayed in or prevented from making shipment, then at our option, this contract becomes null and void.’ We desire to notify you that we hereby avail ourselves of the above option and cancel same, with the exception of 20,000 bags, which will be willing to ship out under your contract of April 8th.”
Thereupon, plaintiff addressed a letter to defendant advising that upon its failure to inform him of its willingness to ship the 60,000 bags as requested, by 9:00 o’clock a. m. of August 19th, he (plaintiff) would proceed to buy the goods in open market and look to defendant “for any unnecessary outlay of money in so doing.”
Subsequently some verbal negotiations took place between plaintiff and the officers of defendant, but nothing came from them, and on August 20, 1914, plaintiff had the attorney representing him at that time to make demand upon defendant, as follows:
“I therefore, on behalf of Mr. Tanner, demand that you specifically .perform your contract, otherwise I am instructed to file suit for the damages caused Mr. Tanner by your dishonoring your contract obligation, and failure to perform your part of the contract.”
The record indicates that, while engaged in other lines of business, the plaintiff occasionally dealt in secondhand sugar bags. At the time of giving the order above quoted, he had made no arrangements for a resale of the bags, but a few days before directing shipment on August 17, 1914, he had closed a deal with certain individuals in Havana for the sale and delivery of 72,000 bags, and intended to apply the 60,000 contracted for with defendant on this order. After the negotiations referred to and quoted above had proven fruitless, Tanner, together with one of the persons with whom he had agreed to deliver 72,000 bags, went into the market in the city of New Orleans, and purchased 28,500 bags at a price of 19% cents apiece. They attempted to fill the balance of the order, and, according to their testimony, on account of the war in Europe having broken out about the first of August, they were unable to obtain any more, and the price quoted was from 22 to 25 cents apiece, though none were to be had at any price.
On the last day of August, 1914, defendant wrote and delivered to plaintiff at about the hour of 11:00 o’clock a. m. a letter, purporting to tender delivery of the entire order of 60,000 bags, as follows:
“New Orleans, August 31, 1914.
“Mr. Ered Tanner, City — Dear Sir: The sixty thousand (60,000) bags for August delivery, under contract with you of April 8, 1914, are now ready for delivery to you at New Orleans, La., at any time during this day.
“Please arrange for their acceptance and payment ; your failure to take and pay for the bags to-day will constitute a violation of your contract. We would thank you to advise us as soon as possible during the day at what hour you will begin receiving the bags, which we beg to repeat are at your disposal this.day.
“We await your answer and remain,
“Very truly yours,
“Eagle Bag Corporation,
“By H. E. Gumble, Pres.”
No action was taken by plaintiff on this proposal, and subsequently this suit followed.
Opinion.
The defenses to this action are numerous and varied, and, in some respects, have the appearance of being somewhat inconsistent. *507 The evidence discloses that shortly prior to the first of August, 1914, and for a few days thereafter, the defendant had been calling upon plaintiff for shipping directions; but, when the request to ship out the whole order of five carloads was received on August 17th, it apparently thought to take advantage of the stipulation providing that the contract should be void if it was unable to comply because of causes beyond its control, and accordingly advised that, availing itself of this provision, it declared the contract canceled, except as to 20,000 bags, which it expressed a willingness to ship. In line with this idea, in the second paragraph of its answer, it averred that, because of circumstances beyond its control, it was unable to ship at the time called upon, and in the same paragraph denied that it was under any obligation to ship then. Again, the answer admits that the five carloads were understood to embrace 60,000 bags; but it is seriously urged as a defense that the contract was never complete because of the indefinite number or quantity of bags ordered; then, on the last day of August, it ¡makes a purported tender of 60,000 bags, as stated in the alleged tender, in compliance with the agreement of April 8, 1914.
It is also contended that the defendant had until sundown of August 31, 1914, in which to make delivery of all or any part of the shipment, and that the letter proposing to deliver the full 60,000 bags at New Orleans, delivered near noon on the last day, relieved it of any further liability under the contract.
Defendant also urges that the contract was a nudum pactum because it did not obligate the plaintiff to receive any part of the shipment, and endeavors to assimilate this case to that of Campbell v. Lambert, 36 La. Ann. 35, 51 Am. Rep. 1.
[1, 2] In our opinion, the document sued on, when confirmed by the letter of defendant quoted herein, formed a valid and commutative contract, under which either party was liable for its breach. There was a price, a thing, and the consent of the parties; the sale was accepted by the plaintiff, and, had he refused to receive the bags and pay the price, when timely and properly tendered, in good faith and according to the agreement, the defendant would undoubtedly have had its right of action in damages. We also think that, being the obligor as to shipping, it could have, in good faith, fulfilled its obligation at any time during the month of August, 1914. However, it commenced to request shipping instructions prior to the first of that month, and both parties thereby apparently construed the contract to contemplate that such directions should first be given. Defendant did not insist that it had the right to ship on the 1st day of August, or any day thereafter during that month, at the time referred to, but apparently acquiesced in plaintiff’s failure to order the bags out. On August 17th, when the order to ship was given, it did not plead a violation of the contract because of any such default on the part of plaintiff, but, as above indicated, pitched its refusal upon “prevailing conditions,” and declared the contract canceled, save as to 20,000 bags. It was then that plaintiff advised defendant that, because of this refusal, he would be compelled to purchase the goods in open market and hold defendant liable for any loss occasioned thereby. Subsequent negotiations, which were initiated and pursued mainly by plaintiff, produced no change in the relation of the parties; and the matter was apparently considered at an end, until suddenly, at 'The eleventh hour on the last day, defendant delivered its letter purporting to tender the whole shipment of 60,000 bags in the city of New Orleans, and demanding immediate payment. This letter has the appearance of having been studiously prepared for the purpose of fortifying the position of defendant in the forthcoming *509 lawsuit which it evidently expected, and, all of the circumstances considered, we doubt the bona fides and good faith thereof. In any event, it was not an offer to perform according to the terms of the agreement, which were to deliver at Sugarlands, Tex., and draw upon plaintiff with bill of lading attached; and, besides, the demand was for immediate payment, whereas, under the contract, plaintiff would have been notified and afforded a reasonable opportunity to meet the draft. It is argued, of course, that plaintiff should not complain, because the delivery at New Orleans was to his advantage ; but, since in our opinion the offer was made as a prospective technical defense to the suit which followed, we think plaintiff has the right to rely upon the technicalities of the contract.
We think it appropriate to say that neither in brief nor argument has the defense been urged that defendant was relieved from performing on account of the exigencies of the war. On the other hand, the record shows that it had on hand or subject to its orders all during the month of August sufficient bags to have filled the contract with plaintiff.
The contract was valid and enforceable, defendant breached it, and the only question for our determination is the measure of damages. R. C. C. art. 1930.
[3] The party breaching a contract is liable to the other for the “amount of loss he has sustained, and the profit of which he has been deprived.” When the one so violating has been guilty of no fraud or bad faith, “he is liable only for such damages as were contemplated.” Where he is guilty of fraud or bad faith through a “designed breach” or “motive of interest or ill will,” he “shall not only be liable to such damages as were, or might have been foreseen at the time of making the contract, but also to such as are the immediate and direct consequence of the breach of that contract; but even when there is fraud, the damages cannot exceed this.” R. C. C. art. 1934.
Had there been no bad faith, we think the defendant would have been liable to plaintiff for the difference between the price at which it agreed to deliver the 60,000 bags, and that at which he sold them — that is, 11% cents per bag and 16%, or 4% cents, or' a total of $2,850. But, in view of the circumstances of this case, considering the bad faith which we believe to have actuated the defendant, we think it is liable for consequential damages; and, inasmuch as it is undisputed that the plaintiff is bound, and his proposed vendee has called upon and will demand that he make good the difference between the prevailing market price of 25 cents at the time of the default, we think he is entitled to a judgment for the full amount claimed.
The judgment appealed from is therefore affirmed, at the cost of the appellant.