The judgment appealed from is therefore set aside and reversed, and plaintiff's suit dismissed at his costs.

---

(99 South. 401)

No. 24231.

## MONUMENTAL BREWING CO. v. SOUTHERN RICE MILLING CO., Limited.

(Feb. 18, 1924.)

*(Syllabus by Editorial Staff.)*

Sales ⚖️152—No liability for failure to deliver brewer's rice not demanded until after contract period.

Where a brewing company contracted with a rice milling company for the purchase of two carloads of brewer's rice, "Shipment: Buyer's option, January 1st to March 1st, 1917," the buyer could not recover damages from the seller for nondelivery of the rice when demand had not been made until after the expiration of the contract period.

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by the Monumental Brewing Company against the Southern Rice Milling Company, Limited. Judgment for defendant, and plaintiff appeals. Affirmed.

Denegre, Leovy & Chaffe, of New Orleans, for appellant.

Lazarus, Michel & Lazarus and Herbert S. Weil, all of New Orleans, for appellee.

By Division B, composed of DAWKINS, LAND, and LECHE, JJ.

LAND, J. Plaintiff sues to recover the sum of $3,150 as damages for the alleged violation by defendant of a contract for the sale

of three car loads .of brewer's rice weighing 60,000 pounds each, and also for the sum of $383.24 for shortage and expenses \in connection with the handling of 48 bags of rice under a former contract. Plaintiff alleges two contracts for the sale of rice, and states in paragraph 9 of his supplemental petition "that under the first of the two contracts above referred to three cars of rice were shipped and the contract fulfilled with the exception mentioned in the next paragraph," which refers to the balance of $383.24, alleged to be due for shortage under the first contract.

It is admitted in the stipulation as to facts "that the item of $383.24 claimed in paragraph 10 of the supplemental petition had been paid to plaintiff by defendant before this suit was brought, but that through error counsel for plaintiff were not advised of this payment until after an answer was filed herein."

The first contract for the sale of brewer's rice for the period of September until January 1, 1917, at 2½ cents per pound, having been fulfilled, and the shortage claimed under said contract having been settled before the institution of this suit, the first contract is eliminated from the case.

Regardless of the demands for shipments which may have been made under the first contract covering rice for September and December, 1916, the second contract for rice was for shipments from January 1, 1917, until March 1, 1917, at 2½ cents per pound f. o. b. New Orleans, and no demand was made by plaintiff upon defendant for compliance with this contract until May 2, 1917, or more than two months after the time limit for shipments. All of the telegrams in the record relate to demands for shipment under the first contract, except the night letter of date May 2, 1917, which refers to shipments under the second contract. As late as March 17, 1917, we find a letter in the transcript from Berndt & Co., brokers, advising defendant that—

"Both of the cars in question have been held up at pier 49, North river, since February 22d, and, regardless of reported requests, they have been unable to induce the B. & O. Railroad to bring the goods down to Baltimore, so far."

From February 26, 1917, to, and inclusive of, March 12, 1917, rice was quoted at 2½ cents per pound on the New Orleans board of trade; from March 14, 1917, to March 30, 1917, at 2⅝ cents; from March 30, 1917, to April 7, 1917, at 2¾ cents; from April 7, 1917, to, and inclusive of, April 9, 1917, at 2⅞ cents; from April 9, 1917, to, and inclusive of, April 30, 1917, at 3⅝ cents; from May 1, 1917, to and inclusive of May 20, 1917, at 4 cents; and from May 21, 1917, to, and inclusive of, June 25, 1917, at 4⅛ cents per pound.

War had been declared by our government against Germany on April 6, 1917, and all food stuffs, including rice, began at once to increase in price, a fact well known to plaintiff and to the whole civilized world. Yet plaintiff, evidently awaiting a higher rise in prices, remained quiescent until May 2, 1917, before it placed defendant in default as to the first shipment under the contract. Plaintiff could have made its demand on defendant for a compliance with its obligation in February, and for the first twelve days in March could have gone into the open market in New Orleans, the shipping point named in the contract, and could have purchased brewer's rice at 2½ cents per pound, the contract price. Even at the end of March rice could have been bought in New Orleans at 2¾ cents per pound. Plaintiff made not the slightest effort to minimize the damages resulting from the alleged breach of this contract, when it could have readily done so. The silence and inaction of plaintiff, in the face of a rapidly rising market, until the price of rice was soaring, impels us to the

conclusion that the present suit is purely of a speculative character.

Brewer's rice is a by-product, and its supply is most available during the milling season.

The shipment of the rice by defendant to plaintiff was therefore made subject to the "buyer's option, January 1st to March 1st, 1917." Defendant on August 15, 1916, addressed a letter to Berndt & Co., Baltimore, Md., brokers representing plaintiff, requesting an interpretation of the above clause in the contract, and Berndt & Co. replied that the clause meant "that the buyer has the privilege to order these goods during these months, as he wants them."

Consequently, when the belated order for the first shipment under the contract came in by night letter, May 2, 1917, for "two cars brewer's against contract," defendant replied by wire:

"We have no more brewer's rice; we will be finished milling all of our rice by the end of this week, and have no brewer's rice to offer."

The contract in question reads as follows:

"Baltimore, Md., 8/9/16.

"Sold to Monumental Brewing Co., Baltimore, Md., for account of Southern Rice M. Co., New Orleans, La.: 3 cars (60,000 lbs.) standard quality brewer's rice at 2½ cts. lb: f. o. b. New Orleans.

"Terms: S/D against documents, with privilege of examination on arrival.

"Shipment: Buyer's option, January 1st to March 1st, 1917."

Whether this contract is a mere option and expired on March 1, 1917, as contended by defendant, or whether it is an executory contract of sale is unimportant in our view of the case.

In the case of Bonsor & Co., Inc., v. Simon Rice Milling Co., 151 La. 1094, 92 South. 711, we said that—

"The damages recoverable for the inexecution of a contract of sale by the seller in the absence of bad faith are those in contemplation of the parties when the contract was made, and consist of the difference between the contract price and the market value at the time and place at which the goods were to be delivered."

If we take March 1, 1917, as the last day upon which demand for delivery could be made under the contract, f. o. b. New Orleans, and if we examine the market price at that date and for 12 consecutive days thereafter, we find it to be 2½ cents per pound, the contract price. There was no difference between the contract price and the market price at the time and place when delivery could have been demanded, nor for a reasonable length of time thereafter.

We find no element of bad faith upon the part of the defendant in refusing to deliver as late as May 3, 1917, especially as it had requested, and received from, the broker of plaintiff an interpretation of the contract, and the price of rice had not advanced at the time when a demand for its delivery could have been made. Delivery was to be made at the "buyer's option," and, until the buyer had put defendant in default by demanding the delivery, defendant was not legally in mora, because of nondelivery.

The rice purchased by plaintiff in this case was secured from the Empire Rice Mills Company at 4¼ cents per pound f. o. b. shipping point—one car of 60,000 pounds June 9, 1917, and one car 60,000 June 23, 1917.

The testimony of Mr. Settele and Mr. Cahn, officers of plaintiff company, is as follows:

"Brewer's rice at this time was very scarce. In fact it was impossible to obtain it at any price. Price at which the two cars were purchased on June 9 and June 23, 1917, at 4¼ was certainly below the price on May 3d, as at that time no brewer's rice could be had."

As the above testimony of these two witnesses is identical, word for word, and punctuation for punctuation, we have quoted their testimony as if but one witness had testified. However, rice was selling in the open

market in New Orleans on May 3, 1917, at 4 cents per pound.

In the case of the National Wholesale Grocery Co. v. Simon Rice Milling Co., 152 La. 1, 92 South. 714, we took occasion to say:

"It seems that the price of rice, in the spring of 1917, advanced very rapidly, and it would be unfair to permit plaintiff to select a remote date during a rapidly rising market as that upon which it could fix a standard of measurement. As held in the Bonsor Case, the jurisprudence is settled that, in estimating damages of this character, the price by which parties should be guided is that prevailing on the market on the day of final failure to deliver."

March 1, 1917, was the last day upon which plaintiff had the right or option to demand a delivery of this rice at 2½ cents per pound f. o. b. New Orleans. For twelve days thereafter this price prevailed in the open market in New Orleans, and, as plaintiff could have obtained its rice at the contract shipping point and at the contract price, had a demand been made for its delivery on the last day of the contract, and had plaintiff exercised ordinary diligence, in the event of refusal to deliver, plaintiff is not entitled to recover damages in this suit.

Judgment appealed from is affirmed, at the cost of appellant.