162 So. 48

**BURRUS MILL & ELEVATOR CO. v.
EUNICE GRAIN CO., Inc.**

No. 32992.

May 27, 1935.

Cline, Thompson & Lawes and Plauche & Bass, all of Lake Charles, for appellant.

Isom J. Guillory, of Eunice, and Guillory & Guillory, of Ville Platte, for appellee.

ODOM, Justice.

Plaintiff is a Texas corporation engaged in the business of manufacturing and selling flour. Defendant is a Louisiana corporation which sells flour by wholesale and retail. On October 25, 1929, these parties entered into a contract by which plaintiff agreed to sell and defendant to buy 2,000 barrels of flour at $6.25 per barrel, to be delivered during the month of April, 1930. On February 29, 1930, they entered into another contract for the sale and purchase of 1,000 barrels of flour at $5.75 per barrel, this to be delivered "on or before April 30, 1930," all to be delivered "as per shipping instructions to be given and furnished" by the defendant.

The defendant took only 1,717 barrels under the first contract and 260 barrels under the second, leaving 1,023 barrels undelivered under both contracts.

Plaintiff brought this suit alleging that defendant had breached these contracts, which breach had damaged it in the sum of $4,242.50, for which amount it prayed judgment.

Defendant filed various and sundry exceptions and pleas, which were overruled by the trial court, and which need not be considered. The defense on the merits was that defendant had not breached the contracts, but that if it should be held by the court that it had, it was only a passive breach, and that plaintiff had not put defendant in default by formally demanding performance within the time prescribed. In other words, that plaintiff had waited too long to make its demand for compliance. It alleged further that the two contracts had been novated by a subsequent contract entered into by the parties on August 8, 1930.

There was judgment in the trial court rejecting plaintiff's demands, and dismissing its suit, from which judgment it appealed.

This suit was filed on September 10, 1932, at which time the price of flour was much below what it was when the contracts were entered into and much below the market price of April, 1930, when the flour was to be delivered.

Plaintiff alleged and introduced testimony to show that when the contracts were entered into, it purchased the necessary quantity of wheat from which to manufacture all the flour which defendant had agreed to purchase, and that, due to the decline in the price of flour, it had suffered severe losses due to defendant's failure to take all the flour. This suit is to recover the losses thus sustained.

■ Plaintiff's claim is not well founded. As we have said, the flour called for by these contracts was all to be delivered not later than April 30, 1930. Up to that time, not all of the flour had been delivered, due to the fact, as plaintiff al-

leged and now contends, that the defendant had breached its contracts. If defendant breached its contracts, it was in default on April 30, 1930, and it was then that plaintiff should have demanded performance if it intended to do so at all. If it had demanded at that time that the defendant take the remaining 1,023 barrels of flour and defendant had refused or failed to do so, plaintiff could have sold the flour in open market at a higher price than that which defendant was to pay, and therefore plaintiff would have lost nothing. Here is what the district judge says on that point:

"The evidence shows that on April 4, 1930, the price of the flour contracted for was quoted on the market at $6.30 per barrel; on April 11, 1930 at $6.30, April 18, 1930, at $6.30, and April 25, 1930 at $6.50, or an average of $6.35 per bbl. for the month of April, 1930, a difference of .10¢ per barrel more than the contract price on the contract of October 25, 1929, and .60¢ per barrel more than the contract price on the contract of February 28, 1930. So on the date of performance, April 30, 1930, plaintiff could have sold this flour on the market at a profit of .10¢ per bbl., over the price stated in the first contract, and at a profit of .60¢ per bbl., over the price stated in the second contract."

The district judge says further:

"The testimony of plaintiff's principal witness, Mr. Thompson, who was plaintiff's Sales Manager at the time that these contracts were entered into, is that plaintiff bought its wheat and manufactured it into flour and sold it right along, from day to day, and, therefore, the flour for which defendant contracted was not held for any appreciable length of time.

"The evidence further shows that some months after April, 1930 the market started declining, and on January 21, 1932, one year and nine months after April 30, 1930, the last date for performance of said contracts, the plaintiff, in the face of a rapidly declining market, made formal demand on defendant to comply with said contracts and send shipping instructions, on which date the market value of the flour was $3.45 per barrel, or a difference of $2.80 per barrel from the contract price on the first contract, and a difference of $2.30 per barrel from the contract price on the second contract."

■ As to the law applicable, the trial judge correctly said:

"The jurisprudence of this State is well settled that one will not be permitted to demand the performance of a contract, after an unreasonable delay and in the face of an advancing or declining market, as such damages are speculative and not within the intention of the parties at the date of the signing of the contract, and for that reason not recoverable." Garrison & Son v. Hardwood Co., 156 La. 147, 100 So. 253, and cases therein cited; Monumental Brewing Co. v. Southern Rice Milling Co., 155 La. 454, 455, 99 So. 401.

In the case of Mutual Rice Co. v. Star Bottling Co., 163 La. 159, 111 So. 661, 663, this court said:

"When a buyer breaches the contract of sale, the measure of damages which the seller is entitled to is the difference between the price stipulated in the contract and the market price at which the goods can be readily sold at the time and place of delivery; and it is the duty of the seller to minimize his loss by reselling the goods as soon as practicable after the buyer has refused to accept."

In the summer of 1930 plaintiff realized that defendant was not selling the quantity of flour expected, and it realized also that the reason was that the price which defendant was paying under the old contracts was considerably above the then price of flour. In order to place defendant on an equal footing with its competitors as to price, a representative of the plaintiff company made an airplane trip to Louisiana for the purpose, apparently, of adjusting the contracts so that defendant might be in a position to compete with other dealers.

During that visit a new contract was signed for 2,000 barrels of flour at $4.75 per barrel. Thereafter all the flour which was shipped by plaintiff to defendant was credited by plaintiff on the new contract, until finally the 2,000 barrels were taken and paid for by the defendant.

Mr. Guillory, manager of defendant company, testified that the representative of

the plaintiff company told him, at the time the new contract was signed, that it was to take the place of the old contracts. The representative of the plaintiff company denied that he had told Mr. Guillory that. However, the testimony of Mr. Guillory. is corroborated by the bookkeeper, and the district judge said in his written opinion that he had known Mr. Guillory and the bookkeeper intimately for many years, and that he knew they were men of high standing and integrity, and that he believed what they said. All of the facts and circumstances indicate very clearly that it was intended by the parties that this new contract was to take the place of the old ones. As an indication that plaintiff so understood, it said nothing to defendant about compliance with the old contracts during the time that flour was being delivered under the new contract.

It is contended by plaintiff that the reason it did not ship the flour called for by the old contracts was that defendant gave it no shipping instructions, which it was required to do under the contracts. The reason, of course, why defendant gave plaintiff no shipping instructions with reference to the flour called for by the original contracts is that defendant was regularly ordering flour under the new contract.

It is further contended by plaintiff that it had the right under the original contracts to extend the time for delivery, and that it did extend the time at the request of defendant. However, Mr. Guillory, de-

fendant's manager, testified that he had never at any time asked for these extensions, and we find no testimony in the record to warrant a holding that he did.

Plaintiff's demand on defendant to fulfill the obligations of the two first contracts, made about 21 months after the flour was to be delivered under them, came too late. Plaintiff could not hold these contracts back until the price of flour had so materially declined and then demand performance. It should have demanded performance when the contracts were alleged to have been breached.

The judgment appealed from is correct, and is affirmed.