## MENTE & CO., Inc., v. ELIAS.
### No. 1664.

Court of Appeal of Louisiana.  First Circuit.

Jan. 12, 1937.

C. Arthur Provost and James L. Helm, both of New Iberia, for appellant.

Walter J. Burke, of New Iberia, for appellee.

LE BLANC, Judge.

This is a suit for damages for breach of a contract alleged to have been entered into between the plaintiff, Mente & Co., Inc., and the defendant Elias Rice Mill, represented by Elias Elias, on January 14, 1930, and involving the sale by the former to the latter, of 10,000 rice bags or pockets and 200 pounds of jute twine.

The contract provided for shipping instructions to be furnished by the buyer to the seller and the shipping dates were fixed for the months of August and September, presumably of 1930, at the buyer's option.  In connection with the provision regarding shipment, the contract contained the following clause: "Failing to receive timely shipping instructions or prompt payment, Seller, at its option, may ship approximately equal quantities monthly or declare this order cancelled, either in whole or in part, and if instructions be not received for shipment of entire order during term herein fixed, Seller need not tender the goods nor put Buyer in default, but Seller may then or thereafter at its option either cancel this order or invoice entire undelivered balance and recover full purchase price therefor with interest at highest conventional rate from time goods should have been delivered, and may withhold delivery until full payment plus carrying charges of four per cent per annum from time goods should have been delivered until delivery made.  Attorney's fees or other amounts expended by Seller in enforcing this order or any of Seller's rights hereunder shall be paid by Buyer. * * *"

The contract price of the bags was $92.-50 per thousand and the jute twine 20 cents per pound.

Plaintiff alleges that in spite of repeated demands and numerous requests made by it for shipping instructions, both verbally and in writing, defendant willfully and

without right breached the contract by failing to furnish such instructions or taking the goods contracted for, and that accordingly, on February 9, 1933, availing itself of one of its rights under the clause just quoted, it notified defendant by letter that it had canceled the contract. The measure of damages claimed is based on the difference between the contract price of the goods and the market price as of the date of cancellation, a difference of $37 per thousand on the rice bags and of 10 cents per pound on the twine, plus interest, carrying charges and attorney's fees, all as provided for under the contract. The total amount claimed is the sum of $655.58 with legal interest from date of judicial demand until paid.

Plaintiff averred in its petition that the Elias Rice Mill was owned solely by Assad Elias, against whom judgment is prayed for, but that the contract was signed in the name of the said rice mill by Elias Elias, son of Assad Elias and his duly authorized agent and manager, clothed by his said father with full authority to make purchases for and obligate him as the owner and operator of the rice mill business. By way of emphasizing this authority, plaintiff set out in its petition that on the same day as the contract on which this suit for damages is based, defendant entered into another contract, similar in all respects save as to price and quantity of bags and shipping dates, which was signed in the same manner and which was fully executed by the said defendant.

Defendant's first plea was an exception of no cause of action which was overruled in the lower court and from which ruling there appears to be no complaint. For answer, defendant denied generally all the allegations of plaintiff's petition and specially pleaded lack of authority on the part of Elias Elias to have signed either of the contracts referred to therein. He averred that he refused to approve the contract for 10,000 bags and that it was after such refusal that the other contract was made, but as he refused to approve that one also, no attempt was ever made to enforce it. He alleges further that subsequently, he purchased a large number of sacks from the plaintiff, at a different price than stipulated in either contract, all of which were shipped to him C. O. D. and were so paid for by him.

The learned trial judge did not find it necessary to pass on the special defense of want of authority of defendant's son to have signed the contract forming the basis of plaintiff's claim, as he was of the opinion that even though the contract was valid, plaintiff had waited an unreasonable length of time before availing itself of any rights thereunder to put defendant in default, and that in view of a declining market price during that period of time, the damages now claimed are of a speculative character and not such as were contemplated by the parties at the time the contract was entered into, and for that reason they are not recoverable. The judgment accordingly rejected the plaintiff's demand and dismissed its suit; hence this appeal was taken.

Counsel for plaintiff do not dispute the legal proposition discussed by the district judge in his written reasons for judgment and on which the same is based, although they seem to question his right to have injected the issue in the case when it had not been raised in the pleadings. In our opinion, the trial judge, under the general issue, had a perfect right to dispose of the case on such a legal proposition after the same had suggested itself to him under the facts adduced at the trial. Inasmuch as the putting of a debtor in default is a condition precedent to the recovery of damages in a suit for breach of contract, the want of it need not be specially pleaded in defense, and can be taken advantage of at any time. Hodge v. Moore, 3 Rob. 400; Hepp v. Commagere, 10 Rob. 524.

The rule which requires the placing in mora of the debtor within a reasonable time after his failure to comply with his contract, especially in the face of a declining market, is founded on that other well established theory to the effect that it is the duty of one who suffers damages to minimize his loss as far as possible. In Mutual Rice Co. v. Star Bottling Works, 163 La. 159, 111 So. 661, 663, the Supreme Court said: "When a buyer breaches the contract of sale, the measure of damages which the seller is entitled to is the difference between the price stipulated in the contract and the market price at which the goods can be readily sold at the time and place of delivery; and it is the duty of the seller to minimize his loss by reselling the goods as soon as practicable after the buyer has refused to accept." Numerous cases are cited. In the recent case of Burrus Mill & Elevator Co. v. Eunice Grain Co., Inc., 182 La. 475, 162 So. 48, 50, it was stated: "The jurisprudence of this State is well settled

that one will not be permitted to demand the performance of a contract, after an unreasonable delay and in the face of an advancing or declining market, as such damages are speculative and not within the intention of the parties at the date of the signing of the contract, and for that reason not recoverable." As we have already noted, counsel for plaintiff do not question that rule as a matter of law, but they do contend that there are exceptions which may arise from the facts in a given case and that the facts which exist here are of such nature as to form one of those exceptions.

It is clear that under the very terms of the contract itself, the shipping dates were to be, at the buyer's option, during the months of August and September, 1930. Counsel urge, however, that it was never the intention of the parties that the clause stipulating those shipping dates should have been strictly applied and that this is borne out by the manner in which the other contract signed on the same date, was carried out, some of the shipments thereunder having been made and accepted as late as August, 1931, when all shipments should have been filled not later than June, 1930. But the course pursued by parties in executing one contract, and their indulging one another, is no criterion of what their actions would be in filling another contract between them. We are here concerned with a written contract covering the sale of 10,000 bags to be shipped on buyer's instructions, during August and September, 1930, according to its very terms, and if the seller saw fit to indulge the buyer to any extent, without a definite understanding to that effect, he did so at his own risk.

Whilst it may be that the parties, as late as August, 1931, were still carrying out the other contract, it nevertheless appears certain that as early as December, 1930, if not before, plaintiff was not satisfied with the manner in which shipping instructions were being given by the defendant on either or both contracts, and was becoming apprehensive of the delay. On December 2, 1930, plaintiff addressed a letter to defendant, in which it stated: "Under date of Nov. 15th., you told us that you would be ordering some of the rice pockets very shortly, and it is now December 2nd., and we have heard nothing further from you. We have been very lenient in carrying this matter, and as we told you before carrying charges are accruing and have accrued, but we must insist that some definite action be taken at this time." On February 28, 1931, we find plaintiff writing again complaining to the defendant that they have received no reply to their several letters and insisting that they receive some expression from him as to what he was going to do about shipments. The record contains some twelve letters, we believe, written by plaintiff between February, 1931, and November, 1932, insisting that the defendant comply with the terms of the contract by giving shipping instructions. In some he is even threatened with legal proceedings. But to all of these demands defendant was perfectly indifferent and remained silent. His utter disregard of them, it seems to us, should have indicated to the plaintiff that defendant never did intend to execute the contract they were insisting on and prompted them to put him in default long before February of 1933 if they intended to proceed against him with a claim for damages.

Not only did plaintiff's letters fail to bring any response whatever from the defendant, but even personal calls made on him by their representative accomplished no better result in the way of securing shipping instructions from him. It is said that by the promises he made to their representative, plaintiff was lured into the belief that defendant had acquiesced in an extension of the shipping dates, and that he still considered the contract as binding on him. Mr. Guillory, the representative, testifies concerning numerous visits he made to the defendant's home in New Iberia and the reports to his company indicate that he made serious efforts to obtain shipping instructions as he had been ordered to do and whilst earlier reports might have led to some encouragement that he might succeed, the later ones starting more than a year prior to the date of the letter of cancellation of the contract, February 9, 1933, show clearly that there was no reason to hope for any greater success than their letters to him had brought about.

■ We are referred to the case of Schwartz & Ferry v. L. L. Lamulle, 2 La. App. 64, as one presenting facts wherein an exception was made to the general rule requiring cancellation within a reasonable time after violation of the contract by the buyer in order to take the damages claimed as for breach out of the speculative class. In that case, however, there were involved

four contracts for the delivery of flour within given periods. The delivery dates as fixed according to the terms of each of the four contracts seemed to run into each other, and, as appears from a statement in the opinion handed down by the court, it was "plain from the evidence that notwithstanding the fixed dates enumerated in the respective contracts by which deliveries were to be made, on the one hand, by the plaintiff, and to be received, on the other hand, by the defendant, that each of these parties made reciprocal concessions, the one to the other, concerning deliveries." Here, as we have already stated, we have but one contract under consideration, and whatever may have been the conduct of the parties in regard to any other has no effect on their reciprocal duties and obligations in respect to the one with which we are concerned.

Upon a consideration of the facts, even the most favorable to the plaintiff, we cannot help but conclude that it was more than a year before they notified him of cancellation of the contract under its terms, that they were bound to know that it was his deliberate intention not to fulfill. Surely there was an unreasonable delay. That the market was declining all during the period of the delay can readily be assumed when we consider that the price of the bags dropped $37 per thousand between the date of the contract and that of the letter of cancellation. Under the circumstances, in view of the law as laid down in the cases herein cited and those therein referred to, we are convinced of the correctness of the judgment appealed from, and it is therefore affirmed.